## S11A1076. McNEAL v. THE STATE.

(715 SE2d 95)

THOMPSON, Justice.

Appellant George McNeal was convicted of malice murder, felony murder, armed robbery, and other related offenses in connection with the killing of Michael Taranovich ("Michael") and the shooting of his son, Joseph Taranovich ("Joseph").[1] The facts of this case are largely disputed. Viewed in a light most favorable to the

---

[1] The crimes in this case occurred on September 15, 2005. On March 20, 2007, a Bryan County grand jury returned an indictment charging McNeal with malice murder, felony murder while in the commission of armed robbery, felony murder in the commission of an aggravated assault, armed robbery, three counts of aggravated assault, attempted murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. McNeal's trial commenced April 8, 2008, and ended with a jury verdict finding him guilty on all ten counts. Appellant was then sentenced to life in prison for malice murder, as well as a consecutive ten-year sentence for the armed robbery count. Sentences for one aggravated assault charge, attempted murder, and the firearms charges were to be served concurrently with the armed robbery sentence. The remaining counts were either merged or

verdict, however, the evidence shows that on September 15, 2005, the victims arrived at the home of a friend, nicknamed "Debo," after a full day of selling watermelons. Both victims were habitual marijuana users and Debo had been their longtime supplier. Upon arriving at Debo's residence, Michael began proudly showing off the money he had made that day from selling watermelons — about $550. Michael asked Debo and other guests at the residence if anybody there had any marijuana to sell. When nobody offered to sell any marijuana, McNeal, who was also at the residence, advised Michael that he could find some marijuana for him. McNeal left on his bicycle and returned a short time later with some marijuana which he then sold to Michael.

After the sale was completed, McNeal asked the victims for a ride to a convenience store and then to his house. The victims agreed, and after stopping at a convenience store, McNeal began directing Michael, who was driving, toward a neighborhood that was known as a high-crime area. Michael became nervous and stopped the truck, telling McNeal that he could not drive him any further. At this time, McNeal produced a handgun and demanded Michael's watermelon proceeds. Michael sped off in the truck and several shots were fired before the truck finally came to a stop. Michael, Joseph, and McNeal all exited the vehicle and McNeal continued to shoot each of the victims. Joseph was shot a total of seven times, but lived. Michael was shot six times, and died from his wounds. McNeal took Michael's money out of Michael's pants pocket and fled the scene on foot.

1. The evidence in this case was sufficient to allow any rational jury to find appellant guilty beyond a reasonable doubt of all crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. McNeal argues that the trial court erred by allowing the prosecutor to read McNeal's entire criminal history into evidence. We disagree.

When McNeal testified at trial, his trial counsel asked him "whether [he had] had any encounters with the law." McNeal responded that he had, in connection with a prior felony conviction for possession of marijuana. McNeal further stated that the marijuana conviction was the only prior felony conviction on his criminal record. Trial counsel then moved on to other topics.

During a break between McNeal's direct and cross-examination,

vacated by operation of law under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Appellant timely filed a motion for new trial, which was denied on January 21, 2011. A notice of appeal to the Court of Appeals was filed on February 18, 2011. Pursuant to *State v. Thornton*, 253 Ga. 524 (1) (322 SE2d 711) (1984), the Court of Appeals transferred this murder case to us for disposition. The appeal was docketed during the April 2011 term of this Court, and was submitted for a decision on briefs on May 23, 2011.

the prosecutor argued to the court that McNeal's response to the "encounters" question was a lie because it implied that the marijuana conviction was his only past encounter with the police. In this regard, the prosecutor pointed to a 20-plus page arrest record from the Georgia Crime Information Center detailing, among other things, prior Georgia arrests for fleeing and attempting to elude police, aggravated assault, and giving a false name, as well as an arrest in Massachusetts for aggravated assault and attempting to elude police. The trial court allowed this evidence for impeachment purposes, over objection, despite the fact that fleeing the police is a misdemeanor offense, McNeal had been acquitted of the Georgia aggravated assault charge, and the Massachusetts charges had been dismissed.

McNeal's arguments on appeal, and the State's responses, are based on the theory that McNeal never "opened the door" to having the prosecution introduce McNeal's criminal history at trial under OCGA § 24-9-84.1. However, OCGA § 24-9-84.1 refers only to the general rule that allows criminal convictions for felonies and *crimen falsi* offenses to be used to impeach a testifying defendant. At trial, the entire basis of the court's ruling in admitting this evidence was the assertion by the prosecutor that McNeal had lied on the stand and that the prosecutor had the right to disprove that lie. This falls squarely within the purview of OCGA § 24-9-82.

In allowing the State to introduce McNeal's criminal history into evidence, the trial court ruled that a reasonable jury might have interpreted McNeal's testimony as implying that the marijuana conviction was his only prior "encounter with the law." This was a discretionary determination, and we will not disturb that finding on appeal. See *Williams v. Booker*, 310 Ga. App. 209, 211 (1) (712 SE2d 617) (2011) (discussing the trial court's discretionary powers in admitting evidence of disputed relevancy). Because the basis for admitting this evidence was to disprove McNeal's lie by omission, the State was no longer limited to the confines of OCGA § 24-9-84.1. Rather, all admitted evidence was appropriate under OCGA § 24-9-82.

3. Appellant states that trial counsel rendered ineffective assistance by allowing McNeal to testify in such a way as to make his entire criminal history admissible for impeachment. In order for assistance of counsel to be ineffective, a highly deferential review of the counselor's performance must reveal such gross deficiencies as to fall below the standards of "a reasonably competent attorney." *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). In evaluating a counselor's performance, courts must consider both whether counsel failed to meet the minimum standards of objective professional reasonableness, and whether such deficiencies on the part of counsel actually had a prejudicial effect on

the defendant. Id. at 689, 693. Because both of these requirements must be met, a failure to satisfy either prong of the test is sufficient to defeat a claim of ineffective assistance. Thus,

> there is no reason for a court deciding an ineffective assistance claim ... to address both [the deficiency of performance and prejudice] components of the inquiry if the defendant makes an insufficient showing on one.

Id. at 697.

Pretermitting a deficient performance analysis, we find that appellant was not prejudiced under *Strickland*. After all, appellant's prior felony conviction for possession of marijuana, and prior conviction for giving a false name were already admissible for impeachment purposes under OCGA § 24-9-84.1, appellant's assertion that the victims were shot (multiple times) as he wrestled them for control of the murder weapon was far-fetched, and the evidence against him was strong. In sum, appellant has not demonstrated a reasonable probability that the outcome of the trial would have been different. *Coleman v. State*, 286 Ga. 291 (6) (687 SE2d 427) (2009).

4. Appellant claims that it was error for the trial court to refuse trial counsel's request for jury instructions on the defenses of self-defense and justification.

> To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. [Cit.] Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law. [Cit.]

*Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). However, as the trial court correctly pointed out, appellant's entire defense at trial was that, if he fired the gun at all, it was entirely accidental. Appellant never claimed that he intentionally fired the gun in this case, let alone that he fired it "to defend himself ... against [another's] imminent use of unlawful force" as required by OCGA § 16-3-21 (a). While this is completely consistent with a defense of accident, which was properly charged to the jury, this does not meet the "slight evidence" standard put forth in *Davis* to warrant an additional jury charge on self-defense. Likewise, McNeal was not entitled to an instruction on the broader defense of justification. Therefore, we find no merit in this claim.

5. Appellant asserts that his trial counsel rendered ineffective assistance by acquiescing to the trial court's refusal to instruct the jury on the defenses of self-defense and justification. Because we hold

in Division 4, above, that the trial court properly determined the correct defenses on which to instruct the jury, we also hold that by "acquiescing" to the correct rule of law, no attorney would have been so deficient in performing his or her duties as to call into question his or her effectiveness as a counselor. *Strickland*, supra. Therefore, this claim is without merit.

6. Finally, appellant argues that he received ineffective assistance of counsel because trial counsel failed to request a jury instruction on the lesser included offense of voluntary manslaughter. In addressing this claim, McNeal contends that "only slight evidence is necessary to entitle a defendant to a charge on voluntary manslaughter." *Woody v. State*, 262 Ga. 327, 328 (2) (418 SE2d 35) (1992). Under OCGA § 16-5-2 (a),

> [a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

Here, there was no evidence that McNeal acted in response to a sudden, violent passion resulting from serious provocation.

The facts showed that McNeal avariciously eyed Michael's watermelon profits when he was showing his money at Debo's house, and that McNeal persuaded the victims to let him into their truck so that he could rob them of that money at gunpoint. Thus, Michael's death was either the cold, calculated method by which McNeal intended to profit, or, at best, the unfortunate result of resisting an armed robbery.

Because no fair reading of the facts could produce even "slight evidence" of provocation and intentional homicide without malice or an underlying felony, we hold that the trial court's failure to instruct the jury on the lesser included offense of voluntary manslaughter was not error. Likewise, it was appropriate for trial counsel to refrain from requesting such an instruction. Therefore, trial counsel's performance was not deficient under *Strickland*, and appellant's ineffective assistance claim is denied.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 2011.

*Craig T. Pearson*, for appellant.

*Tom Durden, District Attorney, Ronald J. Poirier, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K.*

*Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.

