296 Ga. 713
FINAL COPY

S14A1418. JEFFREY v. THE STATE.

HUNSTEIN, Justice.

Appellant Wisdom Jeffrey was convicted of murder and related crimes in connection with the August 2010 shooting death of his wife. Jeffrey appeals, arguing in his sole enumeration of error that his trial counsel rendered ineffective assistance by failing to request a jury instruction on the lesser included offense of voluntary manslaughter. Though we find no error in the verdicts, we do find error with respect to the trial court's merger of some offenses, and we therefore must vacate and remand to the trial court for proper merger and resentencing.[1]

---

[1] Jeffrey was indicted by a Clayton County grand jury in June 2012 for malice murder, four counts of felony murder, four counts of aggravated assault, and two counts of possession of a firearm during the commission of a felony. At the conclusion of a jury trial held in December 2012, Jeffrey was found guilty on all counts. Jeffrey was sentenced to a term of life imprisonment without the possibility of parole on the malice murder count and a consecutive five-year term for one of the two firearm possession counts; the trial court purported to "merge" the verdicts on all the remaining counts. Through trial counsel, Jeffrey filed a motion for new trial on December 26, 2012, which was amended through new appellate counsel on August 19, 2013. Following a hearing, the trial court denied the new trial motion on

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Jeffrey's wife, Corrissa Friends Jeffrey, was shot and killed in the early morning hours of August 11, 2010 in her Clayton County apartment. Jeffrey and the victim had begun dating in 2007, moved in together in 2008, and married in 2009, shortly after the victim gave birth to a daughter. The couple's relationship was tumultuous, with both Jeffrey and the victim accusing each other of infidelity.

Ashley Layfield, the victim's best friend, testified to witnessing arguments between the couple and, on one occasion, to observing the victim with a swollen eye, which the victim admitted Jeffrey had caused. Layfield further testified that in April 2010, she received a call from the victim and overheard in the background an altercation between the couple during which Layfield heard the victim tell Jeffrey to "get off of me" and "stop it . . . this hurts." The next morning, the victim told Layfield that Jeffrey was "boxing her like a man" and "bashing her head into the couch," and that afterward he refused her pleas to go to the hospital. The victim confided to Layfield that she feared for her life.

December 16, 2013, and Jeffrey filed a notice of appeal on December 23, 2013. The case was docketed to the September 2014 term of this Court and orally argued on September 22, 2014.

The victim's uncle testified that on one occasion in 2010 he had observed the victim with a black eye and scratches on her neck and shoulder and that the victim reluctantly admitted that Jeffrey had hit her. The uncle also testified that Jeffrey owned a shotgun, which the uncle saw at the couple's apartment.

A neighbor of the couple testified that, in June 2010, he witnessed Jeffrey dragging the victim through the apartment complex parking lot by her hair and punching her in the face. The neighbor intervened, the victim ran away, Jeffrey threatened the neighbor while appearing to reach for something in his pants, and the neighbor called the police. Police arrived and arrested Jeffrey for family violence battery; Jeffrey was later released on bond, a condition of which was that he have no contact with the victim.

On August 10, 2010, Jeffrey contacted the victim's grandmother and told her, in an agitated state, that he believed the victim was being unfaithful and their daughter had been conceived by another man. Also on that day, Jeffrey contacted his friend Keisha McZick and expressed concern that he had not seen the victim in a few days.

Around 11:00 p.m. on August 10, shortly after the victim had left her place of employment, a male co-worker saw a man knock on the front door of

3

the office building and walk away when no one opened the door. Shortly after midnight, police responded to a 911 call from the victim at her apartment and found Jeffrey there. Jeffrey acknowledged he was bound by a no-contact order, and the officer escorted Jeffrey away but did not arrest him. Approximately an hour later, police were again dispatched to the apartment and arrived to discover the victim shot dead in the bedroom. No one else was present in the apartment when police arrived.

At approximately 3:00 a.m., Jeffrey appeared at McZick's home seeking shelter and food. McZick, who by this time knew that there had been "an incident," did not allow Jeffrey into her home, but she did give him food and a cell phone.

A neighbor in the apartments testified that he heard several "pops" in the early morning hours of August 11. He also testified that Jeffrey's vehicle had been parked in the parking lot during the day of August 10 and that the vehicle was not in the lot the following morning.

A search of the crime scene uncovered shotgun pellets and casings. A crime scene expert concluded that the shots had been fired while the shooter was advancing on the victim. A pump-action shotgun was also found in the

4

apartment and was later determined to have fired the pellets removed from the victim during the autopsy. Blood on the gun matched that of the victim. The medical examiner testified that the victim had sustained gunshot wounds to the shoulder and abdomen, which would not have been immediately fatal, and a gunshot wound to the head, which would have instantly killed her.

Approximately 18 months after the murder, after a nationwide manhunt, Jeffrey was located in Ohio, having changed his appearance by growing out his hair and facial hair. He had been utilizing pre-paid cellular phones for communication, which do not require proof of identification to obtain.

1. Though Jeffrey has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Jeffrey was guilty of all the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Jeffrey contends his trial counsel rendered ineffective assistance by failing to request a jury instruction on voluntary manslaughter as a lesser included offense of murder.

To prevail on this claim, he must show that the failure to make the

request was a deficiency in his attorney's performance and that, but for the lack of the instruction, there is a reasonable probability that the jury would have found him guilty of the lesser offense.

Sparks v. State, 277 Ga. 72, 74 (3) (586 SE2d 645) (2003) (citing Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984)). In order to have been entitled to an instruction on voluntary manslaughter, Jeffrey would have had to show at least "slight evidence . . . that the victim seriously provoked [him], causing [him] to kill the victim solely as the result of a sudden, violent, and irresistible passion." (Citations and punctuation omitted.) Jones v. State, 296 Ga. 663, 665 (___ SE2d___) (2015); see also OCGA § 16-5-2 (a). Thus, absent "slight evidence" that the killing was "solely" the result of a "sudden, violent, and irresistible passion," a voluntary manslaughter instruction would not have been warranted, and trial counsel's failure to request an inapposite instruction cannot form the basis for an ineffectiveness claim. See McNeal v. State, 289 Ga. 711 (715 SE2d 95) (2011) (counsel not ineffective for failing to request voluntary manslaughter instruction where there was no evidence to support such a charge); Ros v. State, 279 Ga. 604 (6) (619 SE2d 644) (2005) (same).

Here, there were no eyewitnesses to the killing, and thus the sequence of

6

events immediately preceding the shooting is unknown. The evidence reflects that Jeffrey was upset during the day because he did not know his wife's whereabouts and suspected she was being unfaithful. However, the patrol officer who responded to the victim's 911 call that night testified that, at the time he arrived at the apartment, Jeffrey was asleep, and that, once awakened, Jeffrey's demeanor was calm and he was generally compliant. There was no evidence of any "sudden passion" provoked by the victim subsequent to this encounter such as would support a voluntary manslaughter conviction. To the contrary, the evidence reflects that Jeffrey made a conscious decision to defy the no-contact order almost immediately after being escorted away, returning to the victim's apartment, shooting her dead, and fleeing. As there was no evidence to support an instruction on voluntary manslaughter, trial counsel was not ineffective in opting not to request such a charge. See McNeal, 289 Ga. at 715; Ros, 279 Ga. at 608.

3. Though we find no error with respect to the jury's verdicts, we have noted an error with regard to the merger of certain counts for judgment and sentencing. See Hulett v. State, 296 Ga. 49 (2) (766 SE2d 1) (2014) (merger error, even if it is not raised by the parties, may be addressed by appellate court

7

sua sponte).  As noted in footnote 1, supra, the trial court imposed a life without parole sentence for malice murder, plus five years consecutive for firearm possession during the commission of the murder.  The court then purported to "merge" all four felony murder verdicts and all four aggravated assault verdicts into the malice murder verdict.

As to the four felony murder counts, the trial court merely used incorrect nomenclature, as these verdicts did not "merge" into the malice murder verdict but rather were vacated by operation of law.  See Hulett, 296 Ga. at 53  (when valid guilty verdict is returned on both malice murder and felony murder of the same victim, defendant should be sentenced for malice murder, and alternative felony murder verdicts stand vacated by operation of law).  With the felony murder verdicts vacated, the four aggravated assaults on which the felony murder counts were predicated must be evaluated to determine whether any of these verdicts merged as a matter of fact into the malice murder.  See id.

> The test for determining whether one crime is included in another, and therefore merges as a matter of fact, is the "required evidence" test — whether conviction for one of the offenses is established by proof of the same or less than all the facts required to establish the other crime.

Grissom v. State, 296 Ga. 406, 410 (1) (___ SE2d ___) (2015).

Each of the aggravated assault counts relates to the August 11, 2010 shooting, the first charging assault with a deadly weapon; the second charging

assault by shooting the victim in the shoulder; the third charging assault by shooting her in the chest; and the fourth charging assault by shooting her in the head.  See OCGA § 16-5-21 (b) (2) (aggravated assault with a deadly weapon). Significantly, each aggravated assault count also notes that "at the time of said offense the parties were parents of the same child," thus drawing the offenses within the realm of family violence aggravated assault.  See OCGA § 16-5-21 (k) (aggravated assault committed between spouses, "persons who are parents of the same child," or others in similar familial or cohabiting relationships).

Because there was no evidence that the shooting occurred in a manner other than in a single transaction, with no "deliberate interval" separating any of the shots, see Ortiz v. State, 291 Ga. 3 (3) (727 SE2d 103) (2012), only a single verdict for aggravated assault can stand, and the remainder must be merged into that verdict.  See Coleman v. State, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009) ("[w]hen a victim suffers multiple wounds inflicted in quick succession, each infliction of injury does not constitute a separate assault").  Cf. Thomas v. State, 292 Ga. 429 (5) (738 SE2d 571) (2013) (aggravated assault with intent to rob does not merge into aggravated assault with a deadly weapon, because each requires proof of an element that the other does not, see OCGA §

9

16-5-21 (b) (1), (2)); <u>Jones v. State</u>, 285 Ga. App. 114 (1) (645 SE2d 602) (2007) (aggravated assault with a knife that occurred downstairs at the victim's house did not merge with aggravated assault with a gun that occurred upstairs). In addition, while ordinarily, in the case of a single victim in a single transaction, an aggravated assault verdict will merge into a verdict for murder, see <u>Ortiz</u>, 291 Ga. at 6, this is not so when the aggravated assault involves family violence as defined in OCGA § 16-5-21 (k).

On this issue, this Court recently held squarely that a family violence aggravated assault verdict <u>did</u> merge as a matter of law into the malice murder verdict as to the same victim. <u>Durden v. State</u>, 293 Ga. 89 (1) (c) (744 SE2d 9) (2013). Our holding was expressly predicated on the finding that the family violence aspect of the aggravated assault — which elevates the mandatory minimum sentence from one year to three years, compare subsections (c) and (k) of OCGA § 16-5-21 — was merely a <u>sentencing factor</u> and not an <u>element</u> of the aggravated assault offense. Id. at 92-93. However, a mere two weeks after our decision in <u>Durden</u>, the United States Supreme Court disagreed with this rationale, concluding that, under the Sixth Amendment and the Due Process Clause, any fact that serves to enhance a mandatory minimum sentence is an

element of the crime that must be found by a jury beyond a reasonable doubt. Alleyne v. United States, __ U. S. __ (III) (B) (133 SCt 2151, 186 LE2d 314) (2013). In conformity with Alleyne, our contrary holding in Durden is thus overruled. Accordingly, because the aggravated assault counts here all allege family violence as an essential element, these offenses require proof of a fact that the malice murder count does not, and the guilty verdicts on these counts do not merge into the malice murder verdict.

Accordingly, we vacate the sentencing order insofar as it purported to "merge" the four felony murder verdicts into the malice murder verdict; these verdicts, rather, stand vacated by operation of law. We also vacate the sentencing order insofar as it merged all four of the family violence aggravated assault verdicts into the malice murder verdict, and we direct the trial court to enter judgment on one of the four verdicts, merge the verdicts on the other three aggravated assault counts, and impose a lawful sentence on the single count on which judgment is entered.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

11

Decided March 16, 2015.

Murder. Clayton Superior Court. Before Judge Simmons.

Brian Steel, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.