**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 24, 2020**

# In the Court of Appeals of Georgia

A20A0917. MORELAND v. THE STATE.

HODGES, Judge.

Following a jury trial, Roderick Steele Moreland was convicted of aggravated sodomy (OCGA § 16-6-2 (a) (2)). He appeals from the trial court's denial of his motion and amended motion for new trial, arguing that the trial court erred in admitting scientific and specialized testimony from a lay witness, and that his trial counsel rendered ineffective assistance in a number of respects. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence adduced at trial showed that the victim, L. G., was walking along Highway 138 in Stockbridge,

---

[1] See, e.g., *Powell v. State*, 310 Ga. App. 144 (712 SE2d 139) (2011). Moreland does not contest the sufficiency of the evidence.

Georgia, pushing a cart filled with clothes from the laundromat. L. G. was 41 years old at the time of trial, and has some mental disabilities. Moreland drove by in a white car, pulled over, and offered her a ride. She asked him to take her to QuikTrip. Instead, he took her to his home. At the house, Moreland "rolled his weed up . . . [and] [s]moked it." He also drank a beer. L. G. did not smoke or drink anything. Moreland then went into the bathroom and put on sweatpants but no shirt. L. G. testified that when Moreland came out of the bathroom, he told her to pull her pants down. She refused, so he tried to pull her pants down himself. She would not let him and "held [her] pants tight," but he forced her backward and grabbed her by her neck, choking her. He then attempted to put his "private part" in her "bottom part" but she would not let him. Moreland's pants were down around his knees. When shown a diagram of a male, L. G. circled the male private area and testified that Moreland also attempted to penetrate her private part and put his hands on her private part. Moreland told her to "bend [her] butt over," and when she tried to leave, he told her, "You ain't going nowhere," and "cut off" her cell phone. Moreland then forced her to put his penis in her mouth. She testified that she did not want to do this, and that she did not want Moreland to touch her private area or her butt. She testified that he held her head, hurting her, ejaculated in her mouth, and tried again to take off her clothes and

2

stop her from leaving. When she was able to leave, she gathered her clothes from the car and spat out the ejaculate as she walked to the police station, where she reported the crime.

The detective who interviewed L. G. testified that she sat in a chair "like a child, like, slouched down, and how a child would have their legs up in the air, like, I guess, swinging the legs. . . . [S]he stated that she wanted to report a rape." L. G. told the detective that Moreland had told her to bend over so that he could "put his penis in her behind and she told him, no." She told the detective she sucked Moreland's penis, and that he used force on her. She described Moreland as tall, with braids, a brown face, and glasses. She said he was driving a white car. L. G. identified Moreland at trial as the man "with braids" who had done this to her. The detective's interview with L. G. was recorded on video, and the recording was tendered into evidence without objection and played for the jury. In the video, she repeatedly tells the detective that she said "no" to Moreland's sexual advances. The detective contacted L. G.'s mother and brother, and followed their car as L. G. gave directions to lead them back to Moreland's house. A white car was parked there, and Moreland was on the front steps. The detective described him as tall, lanky, and with braids, matching L. G.'s description. L. G. also identified Moreland in a photographic lineup.

3

Moreland agreed to come to the police precinct. He admitted to picking L. G. up while she was walking with her laundry and giving her a ride to his house. He told law enforcement that he and L. G. watched game shows and music videos. He denied any sexual contact. DNA swabs taken from L. G.'s mouth did not show the presence of semen. A Georgia Bureau of Investigation forensic serologist testified that although DNA may be detected for up to six hours, actions such as spitting, as L. G. testified she did, could mean that DNA would not be found.

In this appeal, Moreland does not challenge the sufficiency of the evidence.

1. In his first enumeration, Moreland argues that the trial court erred in admitting "scientific and specialized testimony from a lay witness as to [L. G.'s] mental age and capacity."

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review." (Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 478 (II) (807 SE2d 350) (2017).

In this enumeration, Moreland points to a statement from L. G.'s brother, in which he testified that his sister had "the mindset of maybe a ten-year-old child." Moreland objected that this "called for speculation and medical testimony," but the trial court overruled the objection.

OCGA § 24-7-701 (a) provides that

[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) Not based on scientific, technical, or other specialized knowledge[.]

Although our case law on this issue focuses on lay testimony about insanity rather than mental capacity per se, it is well settled that "[i]f facts are given on which opinions are based, laymen are competent to give opinions on a person's mental condition." *Wallace v. State*, 248 Ga. 255, 257-259 (1) (282 SE2d 325) (1981) (finding that lay testimony of defendant's father, sister, and minister was competent, during special plea of insanity, where they testified about defendant's difficulty carrying on conversations, sniffing gas as a child, and beliefs about phantom illnesses). Here, L. G.'s brother also testified that his sister received a Supplemental Security Income check because of her "mental state" and because the government had declared her disabled, that she had gone to a "special needs" school, that he paid bills for her, that she lived with their mother, and that she could walk short distances on her own to the library, park, or a store about five minutes away, but that she did not

have a driver's license or a job. He testified that his sister had been this way "since birth," and that he had grown up with her and currently helped his mother care for her. See *Currelly v. State*, 145 Ga. App. 29, 30-31 (3) (243 SE2d 307) (1978) (finding no error where the State's nonexpert witness, a social worker who had interviewed defendant several times, testified that defendant was not psychotic, where "[t]he Supreme Court has repeatedly held that a person's state of mind or mental condition is properly the subject of opinion testimony and that after narrating the facts and circumstances upon which his conclusion is based, a nonexpert witness may express his opinion as to the state of mind or mental condition of another.") (citations and punctuation omitted); *Strickland v. State*, 137 Ga. 115, 117 (4) (72 SE 922) (1911) (concluding that lay testimony from sheriff that defendant was insane was admissible where sheriff had observed defendant's behavior over a long period of time because "[s]anity or insanity is a proper subject for opinion evidence").[2] The brother did not testify as to L. G.'s IQ or any medical causes or diagnoses of her condition. See

---

[2] Moreland's citation to *Farley v. State*, 145 Ga. App. 98 (243 SE2d 322) (1978) is distinguishable. While *Farley* indeed upholds a trial court's decision to exclude documentary and lay evidence of defendant's mental age and IQ, it did so on the basis of the trial court's finding that the mental age and IQ score "were not the product of or within the personal information or knowledge of the witness[.]" Id. at 102-103 (5). Here, L. G.'s brother testified as to his lifelong, personal observation of his sister.

OCGA § 24-7-701 (a) (3). As the State argued at the motion for new trial hearing, the testimony about L. G.'s mental capacity explained the rest of the brother's testimony and showed why L. G. was naive enough to go into a stranger's house, and why she was too intimidated to immediately leave. See OCGA § 24-7-701 (a) (1), (2). The trial court did not abuse its discretion in admitting this evidence.

2. Moreland next contends that his counsel rendered ineffective assistance in several respects. We disagree.

> To prevail on an ineffective assistance claim, Moreland
>
> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) Moreland argues that his trial lawyer rendered ineffective assistance by failing to object to improper bolstering testimony from L. G.'s brother and a police detective.

"It is erroneous for a witness . . . to bolster the credibility of another witness by expressing an opinion that the witness is telling the truth. What is forbidden is opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth.'" (Citations and punctuation omitted.) *Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014).

(i) Moreland argues that his trial counsel failed to object to several statements from L. G.'s brother that amounted to improper bolstering. L. G.'s brother testified that his sister "knew exactly where the incident took place. Absolutely. Yes." Moreland himself, however, admitted that he brought L. G. to his house and he does not dispute that L. G. led police to his house. The brother also testified, generally, that his sister knew right from wrong. The testimony cited above does not "directly address[] the credibility of the victim." *Wright*, 327 Ga. App. at 661 (2) (a).

(ii) The brother testified that based on his sister's reaction after the incident, he "knew something had happened and I knew she was violated because I have never

8

seen her this upset and this distraught. She was pretty overwhelmed to say the least. So I knew something had happened, I didn't know what."

> None of the [brother's] testimony "directly addresse[d] the credibility of the victim." Rather, the [brother] was describing the circumstances of the outcry and the victim's demeanor. [His] testimony that [he] "knew" after hearing about the outcry is vague and ambiguous, and [he] never elaborated what [he] knew.

*Wright*, 327 Ga. App. at 660-661 (2) (a) (finding no ineffective assistance where trial counsel did not object to statements from victim's aunt that victim was crying and she "knew" something had happened because she had known victim "since she was born and I know her manners and I know how she is normal[ly].") (punctuation omitted). In the instant case, as noted above, the brother specifically testified that he "knew something had happened" but "*didn't know what*." (Emphasis supplied.) "Because this testimony was not bolstering, counsel's failure to object was not deficient." *Wright*, 327 Ga. App. at 662 (2) (a) (the failure to make a meritless objection does not amount to ineffective assistance).

(iii) Moreland also argues that trial counsel rendered ineffective assistance in not seeking a trial court instruction that the jury disregard testimony from the brother

9

that his sister was truthful, where her character had not previously been attacked. See OCGA § 24-6-608.

At trial, the State asked the brother if, based on his knowledge of his sister, he believed that she had "a character for being truthful[.]" When the brother responded that she was "truthful[,]" Moreland's trial counsel asked that the testimony be stricken as non-responsive but did not seek a ruling or corrective instruction. The trial court told the State that its questions could only address whether the victim had a truthful character. The State asked again whether L. G. had a truthful character, and the brother responded that she did.

Moreland provides no citations to the record on motion for new trial indicating that he asked his trial lawyer why she did not ask the trial court to instruct the jury to disregard this particular testimony.[3] Absent testimony explaining trial counsel's rationale on this point, an appellate court generally presumes that trial counsel's

---

[3] Trial counsel testified throughout the motion for new trial hearing, however, that she did not know why she did not object to various statements, that she should have and had no strategic reason for not doing so, and that she had largely forgotten the trial and the context. See *Lay v. State*, 305 Ga. 715, 720 (4) (827 SE2d 671) (2019) ("The fact that trial counsel failed to articulate any strategic reasons for [her] failure to object makes no difference, however, because our inquiry is focused on the objective reasonableness of counsel's performance, not counsel's subjective state of mind.") (citations and punctuation omitted.)

actions were strategic, and only when a strategic decision is so patently unreasonable that no competent attorney would have made it do we find ineffective assistance of counsel. See *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019). Here, because the brother's answer to the State's question was both brief and non-responsive, a competent trial attorney might well have made the strategic decision not to call further attention to the statement by following up the objection she had already raised with a further request for corrective instructions or another ruling. See *Glass v. State*, 255 Ga. App. 390, 403 (10) (g) (565 SE2d 500) (2002) (finding no ineffective assistance in counsel's failure to object to testimony on the ultimate issue, that defendant "was successful in his rape" of victim, because counsel "might have preferred not to call attention to the testimony and have ignored the testimony for strategic reasons").

(iv) Moreland also argues that the detective improperly bolstered L. G.'s testimony by testifying that her statements about what happened to her were "consistent" throughout the investigation.

As Moreland points out on appeal, however, L. G.'s statements were not always consistent. For example, she testified both that Moreland put his penis in her mouth and also that he did not. L. G. testified that the incident took place in the

11

basement, then changed her statement and testified it took place in the bedroom. At trial, Moreland's counsel cross-examined the detective about inconsistencies in L. G.'s statements. At the motion for new trial hearing, Moreland's trial counsel testified that the jury would have seen that, contrary to the detective's testimony, L. G. was not consistent in what she said, thereby undermining the detective's credibility.

In an analogous case where law enforcement testified that a witness made consistent statements, and where trial counsel did not object but instead on cross-examination asked questions that pointed up inconsistencies, the Supreme Court found no ineffective assistance of counsel. *Jones v. State*, 292 Ga. 593, 601 (7) (d) & n. 6 (740 SE2d 147) (2013). The Supreme Court reasoned that, despite trial counsel's testimony at the motion for new trial hearing that this testimony "could have been bolstering" and was "probably objectionable," it nonetheless could be "sound defense strategy . . . to show that the law enforcement investigation that led to the prosecution was not as thorough or objective as it should have been, and one way to make such a showing is by evidence that the investigators put too much faith in an unreliable witness." Id.; see also *Green v. State*, 281 Ga. 322, 323-324 (2) (638 SE2d 288) (2006) (defense attorney "was seeking to undermine [the] testimony by mocking the detective's belief in a witness whose statements were so inconsistent");

12

see generally *Shaffer v. State*, 291 Ga. App. 783, 784 (1) (662 SE2d 864) (2008) (finding no ineffective assistance in absence of a bolstering objection where investigator testified that victims' statements were "consistent," because investigator did not comment on victims' credibility or indicate whether he found them to be truthful). Moreland has not shown that trial counsel rendered ineffective assistance in this regard.

(b) Moreland also contends that his trial counsel rendered ineffective assistance by not objecting to hearsay evidence about L. G.'s mental capacity.

Moreland cites to testimony from L. G.'s brother that she receives "an SSI check, Social Security because of her mental state," and that the "government has declared her disabled." Trial counsel testified at the hearing on motion for new trial that she should have objected and had no strategic reason for not doing so.

Moreland argues on appeal that this unobjected-to testimony harmed him because the State's strategy was to show that the victim "was not mentally capable of consensual sex." Moreland, however, points us to nothing in the record indicating that the State ever argued that the victim *could not* consent because she lacked the capacity to do so. The State, by contrast, argued that the victim *did not* consent, and told Moreland "no." The State elicited testimony from L. G. that she refused to let

13

Moreland pull down her pants, and that she did not want to engage in sexual acts with him and tried to prevent him from doing so. Moreland's defense was not that the sex was consensual, but rather that no sexual contact happened at all.

While the testimony about which Moreland complains may well be hearsay subject to objection, Moreland has not shown how this testimony prejudiced him, as he has failed to show that the issue of L. G.'s ability or inability to consent to sexual acts because of her mental condition ever was raised below. See *Hill*, 291 Ga. at 164 (4) (finding a defendant must show both that counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there was a reasonable probability – amounting to a substantial, not merely conceivable, likelihood – of a different outcome at trial).

(c) Moreland avers that his trial lawyer rendered ineffective assistance by failing to request certain jury instructions.

(i) Moreland argues that his trial counsel rendered ineffective assistance by failing to request a jury instruction that the State had the burden of proving beyond

14

a reasonable doubt that L. G.'s mental incapacity rendered her incapable of consenting to sexual acts.[4]

In support of this contention, however, Moreland cites only to testimony that L. G. did not have a job or driver's license, had attended a special needs school, had been declared disabled, and received care from family. Moreland cites to no testimony or evidence indicating that L. G., because of her mental condition, lacked ability to consent to sexual acts. Nor does he cite to any evidence showing that L. G. indicated agreement with Moreland's sexual advances in any way. The issue of whether she had the legal ability to consent to sex in *any* capacity was not before the jury, as the only evidence presented on this point either showed that no sexual contact occurred, as Moreland contended, or that L. G. *did not* consent, because she refused to let Moreland remove her pants, fought back, tried to leave, and said "no," repeatedly.

"To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence

_____

[4] Moreland provides no citation indicating that he offered proposed language for such a charge on motion for a new trial.

15

presented is sufficient to authorize the giving of a charge is a question of law." (Citation omitted.) *McNeal v. State*, 289 Ga. 711, 714 (4) (715 SE2d 95) (2011).[5]

Here, Moreland has not shown that there was even slight evidence to support a jury charge related to, as he argues on appeal, the idea that the victim's "mental incapacity rendered her incapable of knowingly and intelligently consenting to a sexual act." "Accordingly, [Moreland] was not entitled to a jury instruction on [the State's burden of showing that the victim lacked the capacity to consent] and therefore cannot show that counsel's failure to request such a charge constituted ineffective assistance." *Tran v. State*, 340 Ga. App. 546, 551 (2) (b) (798 SE2d 71) (2017).

---

[5] While Moreland also cites to the State's closing argument in support of his contention, jury instructions must be based on at least slight evidence, and it is well-settled that arguments are not evidence. See *Daniel v. State*, 301 Ga. 783, 787 (III) (804 SE2d 61) (2017) ("Counsel is certainly permitted to hypothesize about what may have occurred. But when evaluating a requested jury instruction, the question is not whether there is any *hypothetical scenario* that would support the charge; instead, the question is whether there is any *evidence* to support the charge.") (emphasis in original). Moreland raises no enumeration challenging the prosecutor's closing argument.

(d) Moreland also argues that trial counsel rendered ineffective assistance because she did not seek a jury instruction that the State "cannot use evidence of constructive force to prove aggravated sodomy."[6] We disagree.

In support of his argument, Moreland cites *Thurmond v. State*, 353 Ga. App. 506, 508-509 (838 SE2d 592) (2020) and *Melton v. State*, 282 Ga. App. 685, 694 (2) (b) (639 SE2d 411) (2006), in which this Court found that actual force, rather than constructive force, must be used to prove aggravated sodomy in cases involving victims who are above the age of consent but cannot consent because of mental incompetency or intoxication by drugs or alcohol.[7]

Here, again, there was no evidence that L. G. lacked the ability to consent to sex; there was also no evidence that she consented in any way. There was only evidence that she did not consent or that no sexual contact occurred. Further, L. G. either testified on the stand or told law enforcement that Moreland "grabbed" her by

---

[6] Again, Moreland points us to nothing indicating that at the motion for new trial, he proffered language for the charge he argues should have been given.

[7] "A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). "A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age." OCGA § 16-6-2 (a) (2).

17

the neck and held her backwards, choking her with his hands and squeezing so that she could not breathe and until she passed out "one time." L. G. "pulled" her arms and "forced" her head down onto his penis, held it there so that she could not move, hurting her, and that he hurt her head and stomach.

This Court has held that "[t]he term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation[.]" *Melton*, 282 Ga. App. at 691 (2) (c), citing *Howard v. State*, 281 Ga. App. 797, 800 (3) (637 SE2d 448) (2006). The trial court's charge in the instant case accurately stated this law. As there was no evidence of inability to consent, or the use of constructive force, trial counsel was not ineffective in not requesting an inapplicable jury charge. *Tran*, 340 Ga. App. at 551 (2) (b).

(e) Finally, Moreland argues that the combined effect of his trial counsel's alleged errors amounted to cumulative prejudice depriving him of a fair trial. As we have not found "multiple ways" in which Moreland's trial counsel performed deficiently, see generally *State v. Lane*, 308 Ga. 10, 23 (4) (838 SE2d 808) (2020), we likewise do not find cumulative prejudice.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur*.