[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14484
_____

D.C. Docket No. 2:11-cv-00552-WKW-SRW


LOUISE HARRIS,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF ALABAMA,
WARDEN,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 25, 2017)

Before MARTIN, JILL PRYOR and MELLOY,[*] Circuit Judges.

---

[*] Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

JILL PRYOR, Circuit Judge:

Louise Harris, an Alabama inmate, appeals the district court's denial of her 28 U.S.C. § 2254 federal habeas petition. Harris was convicted for arranging the murder of her husband, Montgomery County Deputy Sheriff Isaiah Harris, and sentenced to life imprisonment without parole. Following unsuccessful challenges to her conviction on direct appeal and collateral proceedings in the Alabama state courts, Harris filed a federal habeas petition in the United States District Court for the Middle District of Alabama, which the district court denied. Harris appeals the rejection of her petition on a single ground: that she was denied effective assistance of counsel at the guilt phase of her trial because a revolving door of trial attorneys, collectively, left her unable to muster an adequate defense. Because the Alabama courts deemed this challenge procedurally defaulted, Harris additionally asserts that she can demonstrate cause and prejudice to excuse the default.

After a thorough review of the briefing and the record, and with the benefit of oral argument, we affirm the denial of Harris's petition. Although we do not rule out that an ineffective assistance of counsel claim could be based on the lack of continuity of counsel, and we agree that Harris can show cause why she failed to raise her claim at the appropriate time in state court, we conclude that she cannot demonstrate that the lack of continuity of counsel prejudiced her case. Thus, she

2

cannot overcome the procedural default and, for the same reasons, cannot demonstrate a meritorious claim of ineffective assistance of counsel.

## I.    FACTUAL BACKGROUND

Harris was convicted in Alabama of the murder of her husband, Isaiah Harris.  The murder was deemed a capital offense because it was "for pecuniary gain or pursuant to a contract for hire" and because Isaiah Harris was an on-duty deputy sheriff.  *Harris v. State*, 632 So. 2d 503, 508 (Ala. Crim. App. 1992).  After Harris was convicted, the jury voted 7 to 5 for a life sentence, but the trial court overrode the jury's recommendation and imposed a death sentence.  *Id.*  Although Harris's death sentence was upheld on direct appeal, it was vacated during her state postconviction proceedings because trial counsel rendered ineffective assistance in failing to investigate and present mitigating evidence at the penalty phase.  Upon the parties' agreement, the trial court resentenced Harris to life without parole.

Below we recount the events that led to Harris's trial and conviction, as well as evidence adduced at her state postconviction proceedings.

### A. Pretrial Proceedings

Lorenzo McCarter hired two men to kill Isaiah Harris.  Sometime thereafter, Harris—who had had an extramarital affair with McCarter—was implicated in the murder.

3

Harris was indigent, so the trial court appointed counsel for her.  On May 19, 1988, the court appointed Frank Riggs and Tim Halstrom as defense counsel.  Two months later, Riggs and Halstrom filed a "Motion for Reasonable and Adequate Compensation of Counsel, or to Excuse Appointed Counsel," in which they admitted that they had "little experience in capital litigation" and requested compensation above that permitted by Alabama law so that they could get up to speed in a short amount of time on the relevant facts of Harris's case and the law governing capital cases.  Ex. A Vol. VI, R-1081-83.[2]  On August 22, 1988, the trial court entered an order "assum[ing] that" counsel's motion was "to be relieved of . . . appointment as attorneys in this case" and relieving counsel of their appointment.  Ex. A Vol. VI, R-1102.  There is no indication in the record that Harris knew of counsel's motion or the court's order.

On August 30, 1988, the trial court appointed Pete Yates to represent Harris.  Although the record does not contain an order appointing co-counsel, it is clear that David Allred also was appointed to represent Harris around August 30:  he is copied on the order appointing Yates.  On September 1, 1988, the trial court appointed Maury Smith to represent Harris, apparently alongside Yates and Allred.

---

[2] The exhibits cited in this opinion were appended to the State's answer to Harris's federal habeas petition, which can be found at docket entry 24 on the district court's docket. They are not included on the district court's electronic docket.

4

On September 6, 1988, a week after he was appointed, Allred filed a "Motion for Relief from Appointment." Ex. A Vol. VI, R-1108. Yates and Smith also apparently moved to withdraw, although the record does not contain their motions. Within days, the trial court granted the motions, permitting all three lawyers to withdraw. Again, there is no indication that Harris knew of counsel's motions or the trial court's orders.

On September 14, 1988, the trial court appointed Barry Leavell and John Alley to represent Harris, her sixth and seventh lawyers in a span of about four months. On September 29, just over two weeks later, the court relieved Alley and replaced him with Knox Argo, who would serve as counsel at trial. At this point, the case was set for trial on March 20, 1989, giving Leavell and Argo six months to prepare a capital murder case for a guilt and a penalty phase.

Less than a week before trial was set to begin, Leavell and Argo notified the trial court that there was a problem: they had just discovered that Alabama law required counsel in a capital case to have had five years of active criminal practice, and neither had the requisite experience.[3] Leavell and Argo nonetheless represented to the court that "factually the case is ready to go to trial." Ex. A Vol. 1, R-25. The court continued the trial and, on March 29, 1989, replaced Leavell

---

[3] *See* Ala. Stat. § 13A-5-54 ("Each person indicted for an offense punishable [by death] who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law.").

5

with Eric Bowen as lead counsel.  Bowen was a relatively experienced criminal lawyer, but he had never defended a capital case.

Just over three months later, on July 10, 1989, Harris's trial began with Bowen and Argo as her counsel.

The facts elicited at trial are thoroughly detailed in the Alabama Court of Criminal Appeals's opinion in Harris's direct appeal.  *See Harris*, 632 So. at 508-09.  We include a summary of facts relevant to this appeal.

The State presented the following evidence at Harris's trial.  At the time of Isaiah Harris's murder, Harris was having an affair with McCarter.  McCarter, who—to avoid a potential death sentence—testified against Harris at her trial, hired two men, Michael Sockwell and Alex Hood, to kill Isaiah Harris while he was on his way to work his night shift at the local jail.  Sockwell and Hood parked a car outside the Harris's subdivision and waited for Isaiah Harris to leave for work.  Isaiah Harris left home around 11:00 p.m.; when he "stopped at the stop sign at the entrance of the subdivision, Sockwell shot him once in the face at close range with a shotgun," killing him.  *Id.* at 508.

McCarter testified that Harris asked him to hire someone to kill her husband. In support of McCarter's testimony, the State offered evidence "of the existence of various insurance policies on the victim's life, with [Harris] specified as the beneficiary."  *Id.*  The State also offered the testimony of several law enforcement

6

officers, who testified that, upon hearing the news of her husband's death, Harris behaved abnormally.  Harris testified in her own defense, adamantly denying arranging her husband's murder.  The jury returned a guilty verdict.

As discussed above, Harris originally was sentenced to death.  That sentence was overturned during her state postconviction proceedings because Bowen and Argo failed to investigate and present an adequate case in mitigation.  By agreement of the parties, Harris was resentenced to life without parole.

## C. Direct Appeal and State Postconviction

Harris received new counsel on appeal, where her conviction was affirmed by the Alabama Court of Criminal Appeals.  *See Harris*, 632 So. 2d at 543.

Then, again with new lawyers, Harris filed a timely petition for postconviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. During those state postconviction proceedings, Harris alleged for the first time that "trial counsel was ineffective at the guilt phase of her trial because . . . counsel failed to maintain continuity in representation."  *Harris v. State*, 947 So. 2d 1079, 1095 (Ala. Crim. App. 2004).  As the state courts did, we refer to this ineffective assistance claim as Harris's "continuity of counsel claim."  The Alabama Court of Criminal Appeals held that the trial court "correctly summarily dismissed this

7

claim pursuant to Rule 32.2(a)(3), as a claim challenging the continuity of counsel that could have been, but was not, raised at trial." *Id.*[4]

Harris petitioned the Alabama Supreme Court for certiorari, arguing that her claim could not be procedurally barred under Rule 32.2(a)(3) because raising the claim at trial "'would have required one of Mrs. Harris's nine assigned attorneys to appreciate and articulate—amid the revolving door of attorney dismissals, withdrawals and appointments that forms the basis of this claim—their [own] . . . ineffective assistance.'" *Ex parte Harris*, 947 So. 2d 1139, 1149 (Ala. 2005) (quoting Harris's brief in support of certiorari). The Alabama Supreme Court granted Harris's petition for certiorari but ultimately agreed with the Court of Criminal Appeals that the claim was defaulted, reasoning that Bowen and Argo had time to raise the claim before the trial began. *Id.*[5]

---

[4] The State maintains, as it did in the state courts, that Harris failed to raise a continuity of counsel claim in her Rule 32 petition. The Alabama Court of Criminal Appeals and the Alabama Supreme Court, however, treated the claim as having been raised in the Rule 32 proceedings in the trial court. *See Harris*, 947 So. 2d at 1095; *Ex parte Harris*, 947 So. 2d 1139, 1149 (Ala. 2005) ("[W]e agree with the Court of Criminal Appeals that that claim is procedurally barred because it could have been, but was not, raised at trial."). Given these facts, we will not revisit the adequacy of Harris's Rule 32 pleadings.

[5] Neither the Alabama Court of Criminal Appeals nor the Alabama Supreme Court deemed Harris's continuity of counsel claim procedurally barred because she failed to raise it on direct appeal, in addition or as opposed to at trial. Nor did the State ever invoke such a bar, in state or federal court. "If . . . the petitioner did raise the claim in the state courts but not at the time or in the manner required by the state procedural rules, the resulting procedural bar defense may be waived by the State's failure to assert it." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1340 (11th Cir. 2009). Harris raised her continuity of counsel claim through one complete round of state court review: state postconviction. Under *Smith*'s reasoning, to the extent Harris's claim could be barred for the additional reason that she failed to raise it on direct appeal, the State has waived that bar by failing to assert it.

8

## D. Federal Habeas

Harris timely filed a § 2254 petition for a writ of habeas corpus.  The State invoked the procedural bar upon which the Alabama courts relied, and Harris argued that she could overcome the default by demonstrating cause why trial counsel failed to raise a continuity of counsel claim and prejudice from counsel's failure to raise it.[6]  The revolving door of attorney appointments, withdrawals, and dismissals, Harris argued, was an objective factor external to the defense that impeded her effort to raise the claim properly in state court.  And, Harris argued, there was a reasonable probability that her continuity of counsel claim would have succeeded had she been able to raise it at an appropriate time.

A magistrate judge recommended that Harris's petition be denied.  With respect to the continuity of counsel claim, the magistrate judge assumed Harris could show cause but determined that she could not show prejudice "because she fail[ed] to demonstrate specific prejudice that resulted from the lack of continuity" and "fail[ed] to show that, absent the alleged discontinuity in her representation, there is a reasonable probability that the result of the proceeding would have been

---

[6] Harris did not argue in the district court, nor does she do so here, that there was no procedural default.  Rather, she contends that she can demonstrate cause and prejudice to overcome the default.

different."  Doc. 34 at 60.[7]  Over Harris's objection, the district court adopted the magistrate judge's recommendation and denied Harris's petition.

This Court granted Harris a certificate of appealability ("COA") on her continuity of counsel claim.[8]

## II. STANDARD OF REVIEW AND BACKGROUND LEGAL PRINCIPLES

"[W]hether a particular claim is subject to the doctrine of procedural default . . . is a mixed question of fact and law, which we review *de novo*.  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  Federal review of a procedurally defaulted claim is available if a petitioner can show both cause for the default and actual prejudice resulting from it.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986).  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

---

[7] "Doc." refers to the numbered entry on the district court's docket in this case.

[8] To the extent necessary, we *sua sponte* expand Harris's COA to include whether the district court was correct in its procedural default ruling.  *See Dell v. United States*, 710 F.3d 1267, 1272-73 (11th Cir. 2013) (*sua sponte* expanding a COA after oral argument).  We note, however, that the prejudice requirement for overcoming a procedural default, on which we decide this case, is coterminous with the ineffective assistance of counsel prejudice inquiry, for which Harris originally was granted a COA.  *See infra* Part II.

Under *Strickland v. Washington*, a defendant has a Sixth Amendment right to effective assistance of trial counsel.  466 U.S. 668, 686 (1984).  Counsel renders ineffective assistance, warranting vacatur of a conviction or sentence, when their performance falls "below an objective standard of reasonableness," taking into account prevailing professional norms, and when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Here, the prejudice showing for overcoming the procedural default is coterminous with the prejudice showing Harris must make to prove her ineffective assistance of counsel claim.  *Mincey v. Head*, 206 F.3d 1106, 1147 & n.86 (11th Cir. 2000) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

### III. DISCUSSION

Harris argues that the district court erred in concluding that she failed to show actual prejudice to excuse the procedural default of her continuity of counsel claim.  She maintains that the discontinuity of counsel denied her the opportunity to form a working relationship with counsel and, as a result, they were unable to effectively assist her defense.

With respect to cause, which the district court did not reach but Harris must demonstrate to prevail, Harris makes two related arguments.  She first contends

11

that the ineffective assistance of her counsel itself provides cause for failing to raise the issue at trial. Second, she argues that her attorneys were prevented by a conflict of interest from raising their own ineffectiveness based on the turnover in counsel, and that this conflict of interest supplies cause.

As to prejudice, Harris asserts that the revolving door of attorneys prevented her from developing a relationship of trust and confidence with defense counsel. She explains that, as a result, critical aspects of her background and intellectual limitations were omitted from her defense.

For the reasons that follow, we hold that although Harris can demonstrate cause for her trial counsel's failure to raise her continuity of counsel claim, she has failed to make the requisite showing of prejudice. We thus affirm the denial of relief.

## A. Cause

Harris advances two reasons why there is cause for her trial counsel's failure to raise the continuity of counsel claim. She first argues that the lack of continuity of counsel itself supplies cause to excuse the default. Although this may explain why some of her lawyers failed to raise the claim—that is, they held appointments only for a matter of days or weeks—ultimately her assertion begs the question why Bowen and Argo, who tried the case, failed to raise the claim during the months they represented Harris (Argo for about 12 and Bowen for about 6). *See Ex parte*

12

*Harris*, 947 So. 2d at 1149 (holding that Harris defaulted her claim because Bowen and Argo "had at least nine months in which to consider whether the fact that Harris had been represented by so many different pretrial attorneys amounted to ineffective assistance").

Harris's second, related, argument for why she can show cause accounts for Bowen and Argo's failure to raise her continuity of counsel claim. Because the claim hinges on the prejudice to her at trial caused by the revolving door of lawyers appointed to represent her, her continuity of counsel claim necessarily is premised upon Bowen and Argo's having been part of the constitutionally deficient representation.[9] In other words, to have raised the claim at trial, Bowen and Argo would have had to establish that the discontinuity thus far had prejudiced Harris's defense, and they could not (or did not) right the ship. Bowen and Argo, as part of the chain of appointed counsel, therefore would have been forced to implicate themselves to raise the continuity of counsel claim at trial.

This implication would have given rise to a conflict of interest whereby counsel would be tasked with asserting their own constitutional deficiency.[10] *See*

---

[9] If they were not part of the deficient representation, then they broke the chain of causation, and any errors at trial could only be attributed to them via a garden-variety ineffective assistance of counsel claim. But this is not what Harris argues. Nor could she, because that claim is beyond the scope of her COA, and the circumstances here do not warrant our expanding her COA to include a claim that Bowen and Argo were ineffective in and of themselves.

[10] Indeed, the State acknowledges that counsel should not be required to allege their own ineffectiveness. *See* Appellee's Br. at 18. The State instead argues that Bowen and Argo's conflict of interest cannot supply cause because Harris has failed to prove a causal link between

*Roberts v. State*, 141 So. 3d 1139, 1141-42 (Ala. Crim. App. 2013) (noting that

Alabama "caselaw questions the propriety of an attorney asserting his or her own

ineffectiveness" and explaining that such an "obvious conflict" may not be

waivable); Lawrence Kornreich and Alexander I. Platt, *The Temptation of*

Martinez v. Ryan*:  Legal Ethics for the Habeas Bar*, 8 Am. Univ. Crim. L. Br., no.

1, at 2 & n.35 (2012) (collecting cases holding that counsel alleging their own

ineffectiveness would produce a conflict of interest).  "A lawyer has a personal

interest in not being found to have performed ineffectively and in preserving her

reputation as an effective practitioner.  That interest, by definition, conflicts with

the interests of a client asserting a claim based on" his lawyer's ineffectiveness.

*Id.* at 2; *see* Ala. R. Prof. Cond. 1.7(b) ("A lawyer shall not represent a client if the

representation of that client may be materially limited by . . . the lawyer's own

interest.").

Had Bowen and Argo advanced the continuity of counsel claim, the

resulting conflict of interest would have violated Harris's Sixth Amendment right

to assistance of counsel.  *See Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where

a constitutional right to counsel exists, our Sixth Amendment cases hold that there

---

the discontinuity and their poor performance at trial.  As discussed below, we agree that Harris
has failed to demonstrate this causal link.  But her failure of proof does not negate the fact that
Bowen and Argo were prevented by a looming conflict of interest from raising the continuity of
counsel claim at trial.

14

is a correlative right to representation that is free from conflicts of interest.").  And a Sixth Amendment violation "must be seen as an external factor, *i.e.*, imputed to the state" for purposes of establishing cause.  *Coleman v. Thompson*, 501 U.S. 722, 754 (1991) (internal quotation marks omitted), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).[11]  This Court has held that, where counsel failed to preserve an error at trial "out of fear of . . . loss of practice," even when counsel's conduct "was not constitutionally ineffective under *Strickland*, . . . such failure is an 'objective factor external to the defense' which is 'cause' for the procedural default."  *Hollis v. Davis*, 941 F.2d 1471, 1479 (11th Cir. 1991) (quoting *Carrier*, 477 U.S. at 488).[12]

The same holds true here.  Under the circumstances of this case, each of Harris's trial lawyers, Bowen and Argo included, was prevented by an objective factor external to the defense from raising Harris's continuity of counsel claim at trial.  Harris therefore has demonstrated cause to overcome the procedural default.

---

[11] In *Coleman*, the Supreme Court held that ineffective assistance of state postconviction counsel could not supply cause to overcome a procedural default, reasoning that because there is no right to counsel at that stage, counsel's deficient performance would not amount to a violation of a petitioner's Sixth Amendment right to counsel and, therefore, could not be seen as an objective factor external to the defense.  501 U.S. at 752-57.  That holding was modified by *Martinez*, in which the Supreme Court held that ineffective assistance of state postconviction counsel can in some circumstances supply cause to excuse a procedural default.  132 S. Ct. at 1315.

[12] *See also Manning v. Foster*, 224 F.3d 1129, 1134 (9th Cir. 2000) (holding that "a conflict of interest, independent of a claim of ineffective assistance of counsel, . . . constitute[s] cause where the conflict caused the attorney to interfere with the petitioner's right to pursue his . . . claim."); *cf. United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991) ("[T]rial counsel . . . can hardly be expected to challenge on appeal his own effectiveness at trial.").

15

## B.  Prejudice

Harris must still demonstrate prejudice, which, for the reasons below, we conclude she cannot do.

As she did in the district court, Harris argues that but for counsel's deficiencies due to the lack of continuity of counsel, there is a reasonable probability that the result of her trial would have been different; thus, she can show prejudice to overcome the procedural default.  Specifically, she contends that, had she not been faced with a revolving door of attorneys, she would have developed a relationship of trust and confidence with counsel, the result of which would have been a more fulsome defense based on her background (including domestic abuse by her husband and McCarter) and intellectual limitations.  This additional context, Harris argues, would have persuaded the jury that she had neither the motive nor the intellectual capacity to orchestrate a murder for hire.

The State's response to Harris's prejudice arguments is twofold.  First, the State argues that a continuity of counsel claim is not cognizable as a freestanding *Strickland* claim.  Second, the State contends that, even if the claim is cognizable, Harris cannot prove prejudice because she has failed to show "how, if at all, the high changeover in attorneys affected [her] defense at trial."  Appellee's Br. at 26. Although it is conceivable that a petitioner could state an ineffective assistance of

16

counsel claim based on discontinuity of counsel, we agree with the State that Harris has failed to demonstrate a causal link between the discontinuity of counsel and resulting errors at trial. Thus, the district court was right to deny her claim.

It is by now black letter law that to prevail on an ineffective assistance of counsel claim, a petitioner must establish "a reasonable probability that, *but for counsel's unprofessional errors*, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added). That is, a petitioner must demonstrate that her counsel's deficient performance caused the prejudice she suffered. Harris has failed to do so. Simplified, Harris maintains that: (1) there was a frequent turnover in attorneys (at least some of whom were underqualified) prior to Bowen and Argo being appointed, and (2) Bowen and Argo never developed a sufficient working relationship with her such that they could muster an effective defense. What she has failed to establish, though, is a causal link between the turnover and what should have been, but was not, presented at trial.

Put differently, Harris has not explained how specific acts or omissions of her first seven lawyers caused the failed strategy presented at trial by her eighth and ninth lawyers. Her general allegations that most of the lawyers appointed to represent her lacked sufficient experience to try a capital case, Bowen had little time to prepare for trial, and the turnover in counsel hamstrung her ability to form

17

a meaningful relationship with counsel do not supply the causal link her claim requires.  *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[A]llegations [in a habeas petition] must be factual and specific, not conclusory.").  Without this link, she cannot demonstrate that any constitutionally deficient representation caused her to suffer prejudice.  And without satisfying the prejudice prong of *Strickland*, Harris cannot establish prejudice to excuse the procedural default.  The district court correctly denied her petition.

## IV. CONCLUSION

It is not a foregone conclusion that a petitioner who, like Harris, experienced a high rate of turnover in counsel leading up to trial could never prove an ineffective assistance of counsel claim based on that discontinuity of counsel.  If, for example, a petitioner could demonstrate that the discontinuity caused a complete breakdown in trial strategy, this might amount to a valid *Strickland*-based challenge to the lack of continuity of counsel.  Unfortunately, Harris has not established the causal link *Strickland* requires.  So although she has shown cause why her trial counsel failed to raise the continuity of counsel claim at trial, she cannot show prejudice.  Therefore, as the district court concluded, we cannot excuse the procedural default the state courts applied, and for this reason, we affirm the district court's denial of Harris's habeas petition.

**AFFIRMED.**

18