[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11171
Non-Argument Calendar

_____

D.C. Docket No. 4:14-cv-00130-RH-CAS

FRANK DIETER,

Petitioner-Appellant,

versus

STATE OF FLORIDA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 4, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Frank Dieter, a Florida inmate, appeals *pro se* the district court's denial of his 28 U.S.C. § 2254 federal habeas petition. Dieter was convicted of two counts of sexual battery of a child under the age of 12 by a defendant 18 years or older and sentenced to two concurrent terms of life imprisonment without the possibility of parole. Following unsuccessful challenges to his convictions on direct appeal and in collateral proceedings in the Florida state courts, Dieter filed a federal habeas petition in the United States District Court for the Northern District of Florida, raising seven claims of ineffective assistance of trial counsel. The district court denied Dieter's petition with prejudice and denied him a certificate of appealability. On appeal, this Court granted Dieter's motion for a certificate of appealability on the sixth of seven claims raised in his habeas petition: that he was denied effective assistance of counsel because his attorney failed to call a DNA expert to testify on Dieter's behalf at trial to contest DNA evidence offered by the State.

We affirm the district court's denial of Dieter's § 2254 petition as to the sole claim Dieter raises on appeal. We conclude that Dieter has failed to show that he was prejudiced by his counsel's choice to forgo calling the DNA expert as a witness. Therefore, Dieter cannot demonstrate a meritorious claim of ineffective assistance of counsel.

2

## I.    BACKGROUND

### A.    Proceedings in the Florida Trial Court

The State of Florida charged Dieter by information with two counts of sexual battery of a child under the age of 12 by a defendant 18 years or older, pursuant to Fla. Stat. § 794.011(2)(a).  The second count, the only one relevant to this appeal,[1] charged Dieter with violating § 794.011(2)(a) by "penetration by, or union with, the defendant's penis and the victim's vagina."  Doc. 8-1 at 38.[2]

Before trial, Dieter's counsel, Assistant Public Defender Joel Remland, moved to exclude DNA evidence produced from labial swabs of the victim on the ground that the methods used to identify the DNA as Dieter's were unreliable and not generally accepted by the scientific community.  The District Court held a *Frye*[3] hearing to consider Dieter's motion.

A DNA expert, William Watson, testified at the pre-trial *Frye* hearing on Dieter's behalf.  Watson testified that the State produced its DNA evidence from the victim's labial swab by using low copy number ("LCN") DNA analysis.  Watson explained that LCN DNA analysis was used to test samples with DNA

---

[1] The first count charged Dieter with violating § 794.011(2)(a) by penetrating the juvenile victim's vagina with his finger; Dieter's arguments on appeal regarding DNA tests performed on semen are immaterial to his conviction on this count.

[2] All citations in the form "Doc. #" refer to numbered entries on the district court docket.

[3] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

3

amounts falling somewhere below the "stochastic limits of the test," between 100 and 200 picograms of DNA.  Doc. 8-2 at 33.

Watson testified that DNA profiles produced using LCN analysis were vulnerable to error because of the small amount of DNA used to produce the profiles.  According to Watson, LCN testing was not generally accepted in the forensic community.  Watson identified three additional problems with the State's LCN DNA analysis in this case:  (1) the State "did not adjust [its] interpretation guidelines to deal with" LCN testing, (2) the State "did not perform a replicate testing . . . to come up with the consensus sequence," and (3) the State did not "test the reference sample from the victim, so they really ha[d] no way of knowing whether or not part of the profile that they were able to generate from the labial swab actually came from the victim."  Doc. 8-2 at 43.  According to Watson, the State's DNA evidence resulting from the labial swab would therefore "not be generally acceptable in the forensic community."  *Id.* at 46.  After hearing from other witnesses, the state trial court denied Dieter's motion to exclude the DNA profile produced from the labial swab.

At trial, the State introduced the DNA evidence from the labial swabs along with additional evidence, including the victim's testimony and testimony regarding DNA collected from the victim's bed sheet, coverlet, and underpants.  The victim, who was five years old when the events at issue occurred, testified among other

4

things that "Mr. Frank . . . stuck his pee in my pee." Doc. 8-3 at 206. The victim also answered in the affirmative when asked whether "Mr. Frank's pee-pee ma[de] [her] sheets wet." Doc. 8-4 at 1.

The State also presented testimony from Suzanne Livingston of the Florida Department of Law Enforcement Crime Laboratory. Livingston testified that she received a rape kit consisting of labial swabs from the victim. Livingston stated that although "very little" semen was present on the labial swabs, the swabs contained enough semen to generate a partial DNA profile that matched Dieter. Doc. 8-4 at 167-68. Livingston testified that the DNA profile produced from the small amount of semen found on the labial swabs matched two of thirteen markers of Dieter's DNA profile. According to Livingston, one out of every 160 Caucasians, one out of every 320 African Americans, and one out of every 170 Latinos would match the DNA profile from the labial swab to the same extent as Dieter.

Livingston further testified that she tested the victim's pillow case, sheet, coverlet, underwear, and t-shirt and found semen matching Dieter's DNA profile on the sheet, coverlet, and underwear. Livingston stated that the DNA profile generated from the semen found on the sheet matched Dieter's DNA profile at all thirteen markers. Livingston stated that only one out of every 460 trillion Caucasians, one in 430 quadrillion African Americans, and one out of every 2.9

5

quadrillion Latinos would match the DNA profile from the sheet to the same extent as Dieter.  Livingston stated that the DNA profile generated from the semen found on the underwear matched Dieter's DNA profile at eleven markers.  Only one out of every 660 billion Caucasians, one in 270 trillion African Americans, and one out of every 3.5 trillion Latinos would match the DNA profile from the sheet to the same extent as Dieter, according to Livingston.

The jury convicted Dieter of two counts of sexual battery of a child under the age of 12 by a defendant 18 years or older; he was sentenced to two concurrent terms of life imprisonment without the possibility of parole.

**B.    Direct Appeal and State Postconviction Proceedings**

Dieter received new counsel on appeal, where his conviction was affirmed by the Florida First District Court of Appeal.

Proceeding *pro se*, Dieter filed a motion in a Florida state trial court for postconviction relief.  After construing this motion as arising under Florida Rule of Criminal Procedure 3.850, the court denied the motion.  Dieter filed a second motion for post-conviction relief pursuant to Rule 3.850, again proceeding *pro se*.  The court denied Dieter's second motion without prejudice.  Dieter filed a third Rule 3.850 motion in which he argued, among other things, that he received ineffective assistance of counsel at trial because Remland failed to call Watson to refute the State's DNA evidence.  The trial court denied Dieter's third Rule 3.850

motion with prejudice, explaining that Dieter's ineffective assistance claims lacked merit because he had failed to allege that he was prejudiced by his counsel's allegedly deficient performance.  Dieter appealed this decision.  The Florida District Court of Appeal affirmed the denial of his motion in a summary opinion.

## C.    Federal Habeas Petition

Dieter filed a § 2254 petition in the United States District Court for the Northern District of Florida.  In this petition, Dieter raised seven grounds for habeas relief, including a claim of ineffective assistance of counsel arising from Remland's failure to call Watson as a trial witness.  A magistrate judge recommended that Dieter's petition be denied.  On the ineffective assistance of counsel claim regarding Watson, the magistrate judge concluded that the state court's rejection of Dieter's claim was not an unreasonable application of clearly established law or based on an unreasonable determination of facts.  The court explained that the performance of Dieter's trial counsel was not deficient because he made a reasonable strategic decision not to call Watson as a witness. Remland's choice was reasonable, according to the magistrate judge, because Watson's testimony regarding the reliability of the DNA profile generated from the semen found on the labial swab was of little use at trial once the State produced additional DNA evidence matching Dieter from semen found on the victim's sheet

7

and underwear.  Over Dieter's objection, the district court accepted the magistrate judge's recommendation and denied Dieter's petition.

This Court granted Dieter a certificate of appealability ("COA") only on his ineffective assistance of counsel claim based on Remland's failure to call Watson as an expert witness at trial.

## II.    DISCUSSION

Dieter contends that the district court erred in denying his habeas petition because his trial counsel was ineffective by failing to call Watson as a witness at trial.  Even if the state trial court made an unreasonable determination of law when it found that Dieter failed to allege prejudice in his petition, we conclude that the district court properly dismissed his petition because he demonstrated no prejudice.

## A.    Whether Dieter's Claim Is Procedurally Barred

Before turning to the merits of Dieter's appeal, we address a threshold issue raised by the State.  The State contends that Dieter's claim on appeal has been procedurally defaulted because Dieter did not fairly present this claim to the state trial court.  We disagree.[4]

---

[4] Although our review is limited to the issues specified in the COA, we "will construe the issue specification in light of the pleadings and other parts of the record."  *Murray v. United States*, 145 F.3d 1249, 1250-51 (11th Cir. 1998).  Where "procedural issues . . . must be resolved before [we] can reach the merits of [the] underlying . . . claim" and "these arguments have not been addressed by the district court," we read the COA to encompass those issues.  *McCoy v. United States*, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001).  The district court did not address this issue in its order denying Dieter's § 2254 petition.  We therefore read the COA to encompass the State's procedural default argument.

"Whether a particular claim is subject to the doctrine of procedural default is a mixed question of fact and law, which we review *de novo*." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (alterations adopted), *cert. denied sub nom. Harris v. Dunn*, 138 S. Ct. 2577 (2018).

"Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012). "It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar." *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005). We conclude that Dieter exhausted his claim because he fairly presented it to the Florida state courts.

To fairly present a claim, a petitioner must make the state court aware that the petitioner raises a federal issue. *Lucas*, 682 F.3d at 1352. The Supreme Court has stated that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In the section of his petition raising the ineffective assistance of counsel claim at issue in this appeal, Dieter cited an opinion of the United States Court of Appeals for the Third Circuit that decided a federal ineffective assistance of counsel claim. *See Jermyn v. Horn*, 266 F.3d 257, 282-83, 287 (3d Cir. 2001) (concluding that a habeas petitioner raising a federal ineffective assistance of counsel claim failed to satisfy *Strickland v. Washington*, 466 U.S. 668 (1984)). This reference was sufficient to fairly present the federal issue to the Florida state courts. The claim Dieter raises in this appeal has therefore not been procedurally defaulted.

The State argues that Dieter failed to fairly present the ineffective assistance of counsel claim to the Florida courts because he failed to allege prejudice in his petition, as required to prevail under *Strickland v. Washington*, 466 U.S. 668 (1984). The State appears to conflate the question whether a petitioner has fairly presented a claim to a state court with whether the petitioner will prevail on the claim's merits. *Baldwin* does not require a petitioner to fully address the merits of a federal claim in order to fairly present the claim to a state court. Rather, a petitioner may satisfy *Baldwin* by making the state court aware that the petitioner raises a federal issue. Because Dieter "cit[ed] in conjunction with [his] claim . . . a case deciding such a claim on federal grounds," Dieter has satisfied this standard. *Baldwin*, 541 U.S. at 32.

10

## B.    Dieter's Claim of Ineffective Assistance of Counsel

We now turn to the merits of Dieter's ineffective assistance of counsel claim.

This Court reviews a district court's denial of a § 2254 habeas petition *de novo* and its factual findings for clear error. *Sims v. Singletary*, 155 F.3d 1297, 1304 (11th Cir. 1998). Where, as here, the highest state court decision reviewing a § 2254 petition is not accompanied by any reasoning, we "look through" that unexplained decision to the last state court decision providing a reasoned explanation and presume that the highest state court decision adopted that rationale. *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018).[5]

A state prisoner may pursue habeas relief in federal courts "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally bars a federal court from granting habeas relief to a state habeas petitioner on a claim that was adjudicated on the merits in state court unless the state court's adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as

---

[5] In *Wilson*, the Supreme Court explained that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds." *Wilson*, 138 S. Ct. at 1192. Florida has not argued that the presumption is rebutted here, so we look through.

11

determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Id.* § 2254(d)(l), (2).

"'Clearly established' in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of the Supreme Court's cases at the time of the relevant state court decision." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1258 (11th Cir. 2016) (second internal quotation marks omitted). "'Contrary to' means the state court applied a rule different from the governing law set forth in Supreme Court cases, or it decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Id.* at 1258-59 (alterations adopted) (second internal quotation marks omitted). "An 'unreasonable application' under § 2254(d)(1) occurs when a state court decision (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular state prisoner's case, or (2) either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1259 (alterations adopted) (second and third internal quotation marks omitted). "The 'unreasonable application' inquiry asks whether the state court's application of clearly established federal law was objectively unreasonable, which requires the state court decision to be more than incorrect or

12

erroneous." *Id.* at 1259 (alterations adopted) (second and third internal quotation marks omitted) (citation omitted). At bottom, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 1260 (internal quotation marks omitted).

"Once a federal court determines that a state court decision is unreasonable under § 2254(d), we are unconstrained by § 2254's deference and must undertake a *de novo* review of the record." *Id.* (internal quotation marks omitted).

To demonstrate a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance, such that counsel was not functioning as guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the petitioner, such that there is a "reasonable probability" of a different outcome but for counsel's deficient performance. *Strickland*, 466 U.S. at 687, 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

Here, the last state court decision providing a reasoned explanation for denying the instant claim determined that Dieter's claim was facially insufficient because he failed to allege prejudice. But Dieter's § 2254 petition contained two statements we deem sufficient to allege prejudice. First, Dieter alleged: "Counsel's failure to call Mr. Watson at trial to dispute [the] State's evidence that

13

was not tested [with a] proper procedure . . . allowed the Prosecutor to railroad Petitioner with absolutely no defense to this untrustworthy evidence."  Doc. 8-7 at 5.  Second, Dieter contended:  "Had counsel called the[ ] only witness, Mr. Watson could have shown the [j]ury that FDLE failed to test the DNA on the [l]abial swabs properly, ultimately proving that . . . there was in fact no penetration or union with the child's sexual organs committed by Petitioner."  Doc. 8-7 at 6.

We need not decide whether the state court's decision that Dieter's allegations were insufficient is entitled to deference under AEDPA because Dieter has failed to show prejudice under even a *de novo* standard of review.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012) (same).

It is not reasonably probable that Watson's testimony would have changed the outcome of Dieter's conviction on the second count of the information, which charged him with "penetration by, or union with, the defendant's penis and the victim's vagina."  Doc. 8-1 at 38.  In addition to the evidence from the labial swabs, at trial the State introduced DNA evidence linking Dieter with semen found

14

on the victim's underwear and sheet.  Livingston testified that the State discovered semen matching Dieter on the victim's sheet and underwear in quantities far greater than in the sample taken from the labial swabs.  Therefore, Watson's testimony regarding the reliability of the State's LCN DNA analysis would have been immaterial to the jury's consideration of the evidence taken from these other sources.  The State also introduced a taped telephone statement made by Dieter to the local sheriff's office in which he admitted that he touched a five-year-old girl.  The jury's verdict was further supported by the victim's testimony, which was corroborated by the DNA evidence.  Thus, Dieter was not prejudiced by any failure of his counsel to call Watson as a trial witness.  The district court correctly denied Dieter's petition as to this ineffective assistance of counsel claim.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Dieter's habeas petition.

**AFFIRMED.**