[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14347
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-00251-CAP

WISDOM JEFFERY,

Petitioner-Appellant,

versus

WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 3, 2020)

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Wisdom Jeffery appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. The district court granted a certificate of appealability ("COA") on two issues: (1) whether trial counsel was ineffective for failing to present alibi testimony; and (2) whether appellate counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness. After careful review, we affirm the denial of Jeffery's § 2254 petition.

## I.

In December 2012, a Georgia state jury convicted Jeffery of murder and related crimes in connection with the August 2010 shooting death of his wife, Corrissa Friends Jeffery. According to the Georgia Supreme Court's opinion affirming the murder conviction, *see Jeffrey*[1] *v. State*, 770 S.E.2d 585, 586–87 (Ga. 2015), the trial evidence established the following.

Jeffery and the victim married in 2009, shortly after the victim gave birth to a daughter. The couple's relationship was tumultuous. Both Jeffery and the victim had accused each other of infidelity, and Jeffery was known to have beaten her. After an instance of domestic battery in June 2010, Jeffery was arrested and then released on bond with the condition that he have no contact with the victim.

---

[1] Jeffery's last name appears alternatively as "Jeffrey" and "Jeffery" throughout the record. We use the spelling that appears in his federal petition for a writ of habeas corpus.

On August 10, 2010, Jeffery contacted the victim's grandmother and told her that he believed the victim, whom he had not seen in a few days, was being unfaithful and their daughter had been conceived by another man.  That night, shortly after midnight, police responded to a 911 call from the victim at her apartment and found Jeffery there.  Jeffery was escorted away from the apartment.  Approximately one hour later, police were again dispatched to the apartment in response to a second 911 call by the victim.

Although not mentioned by the Georgia Supreme Court, it appears undisputed that, as recounted by the state habeas court, during the second 911 call, the victim said, "Get the hell out the house.  Get out the f—kin' house, Wisdom.  Now.  Get out of the house.  Get out."  The recording apparently concludes with the victim asking for an officer to be sent to her apartment, starting to give her address, and then screaming loudly before the phone cuts out.  This 911 call occurred at 1:58 a.m.

When police arrived several minutes later, they discovered the victim dead in the bedroom and no one else present.  The victim was shot three times by a pump-action shotgun.  The victim's uncle testified that Jeffery owned a shotgun, which the uncle had seen at the apartment.

At approximately 3:00 a.m., Jeffery appeared at the home of a friend, Keisha McVick (also known as Keisha Dean), seeking food and shelter.  McVick knew there

3

had been "an incident" and did not allow Jeffery into her home, but she did give him food and a cell phone.

After the murder, Jeffery absconded. He was eventually located in Ohio approximately 18 months later, following a nationwide manhunt.

## II.

After the jury verdict, Jeffery filed a motion for new trial. Before that motion was ruled on, Jeffery obtained new counsel—to whom we will refer loosely as "appellate counsel"—and filed an amended motion in August 2013, arguing that trial counsel provided ineffective assistance by failing to request a jury instruction on voluntary manslaughter. Following a hearing, the trial court denied the motion. Jeffery appealed, and the Georgia Supreme Court—aside from caveats not relevant to this appeal—affirmed. *See Jeffrey*, 770 S.E.2d at 715–19.

Jeffery next filed a petition for a writ of habeas corpus in state court, alleging ineffective assistance of trial and appellate counsel. He contended that trial counsel was ineffective for failing to locate, interview, and present alibi witnesses at trial, and that appellate counsel was ineffective for similar failures and for failing to raise a claim of ineffective assistance of trial counsel at the motion-for-new-trial stage or on appeal. He further asserted that the failure to present the alibi testimony at trial resulted in a miscarriage of justice.

4

The state habeas court held an evidentiary hearing on Jeffery's petition in May 2017. At the hearing, Jeffery called multiple witnesses, including Yetunde Vankole and Bianca Bailey, who placed him at another location at the time of the murder. The sequence of events, according to these witnesses, was as follows. At around 1:30 a.m. on August 11, Jeffery arrived at the home of Elite Noel. Jeffery spoke with several women outside the home and, after borrowing a phone to make a call, requested a ride to another neighborhood, where McVick lived. Vankole agreed and drove him to that location accompanied by Bailey and two others. Vankole testified that they left at around 1:40 a.m. and arrived twenty minutes later. Bailey was less sure of the timing but offered similar testimony as Vankole. In other words, Vankole and Bailey's testimony placed Jeffery away from the victim's apartment at the time of the second 911 call at 1:58 a.m. Both Vankole and Bailey were unaware of the timing of the murder until 2015 or 2016, when they spoke with Jeffery's post-conviction attorney.

Trial and appellate counsel also testified at the hearing. According to trial counsel, Jeffery told counsel that he had received a ride from some individuals at Noel's house on the night of the murder. But trial counsel was unable to reach Noel, Jeffery did not identify the individuals who had given him a ride, and "[n]obody else knew who these people were." Trial counsel further stated that he had "asked everyone that [he] could reach and talk to" whether they were "with Wisdom during"

5

the period around when the murder occurred, but only McVick stated that she had seen him.

Appellate counsel testified that he was not aware of any potential alibi witnesses until after he stopped representing Jeffery. Appellate counsel did not have specific memories about several aspects of his representation of Jeffery, deferring to what was in writing in his case file, but he was certain that neither Jeffery nor others brought to his attention the names of potential alibi witnesses. He testified that "no one ever told me that there were potential, critical witnesses in this case that should have been used as an alibi or anything else."

The state habeas court denied Jeffery's petition. Addressing appellate counsel first, the court credited his testimony that he was not informed of the names of the purported alibi witnesses and concluded that he did not render ineffective assistance by failing to call alibi witnesses he was not aware of. Further, the court concluded that, even if appellate counsel were aware of these witnesses, their testimony would not have corroborated an alibi for Jeffery in light of other evidence at trial. Turning to trial counsel, the court found that this claim was procedurally defaulted under O.C.G.A. § 9-14-48(d), because it was not timely raised post-trial after Jeffery obtained new counsel and Jeffery had not established either cause or prejudice to excuse the default based on ineffective assistance by appellate counsel.

6

Following the Georgia Supreme Court's denial of his application for a certificate of probable cause to appeal, Jeffery filed a § 2254 habeas corpus petition in federal court. A magistrate judge prepared a report recommending that Jeffery's § 2254 petition be denied. Without addressing the procedural-default ruling, the magistrate judge concluded that trial counsel was not ineffective for failing to present the testimony of witnesses that he could not locate after a reasonable investigation, and that appellate counsel was not ineffective for failing to call witnesses about which he was never informed. Over Jeffery's objections, the district court adopted the magistrate judge's recommendation and denied the § 2254 petition. The court granted Jeffery COAs on his claims.

## III.

We begin with Jeffery's claim that trial counsel was ineffective for failing to investigate and present alibi witnesses at trial. The state habeas court concluded that this claim was procedurally defaulted under O.C.G.A. § 9-14-48(d). The district court, however, did not address the procedural-default ruling and denied the claim on the merits. Although it appears this decision to bypass the procedural-default ruling was permissible, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

7

applicant to exhaust the remedies available in the courts of the State."), we limit our analysis to the grounds stated in the state habeas court's ruling.[2]

Whether a claim is procedurally defaulted is a mixed question of fact and law that we review *de novo*. *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). A claim is procedurally defaulted where the state court applies an independent and adequate ground of state procedure to conclude that the petitioner's federal claim is barred. *Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 908 (11th Cir. 2009).

Here, the state habeas court applied Georgia's procedural default rule, § 9-14-48(d), which provides an adequate and independent state ground for denial of a habeas claim. *Ward v. Hall*, 592 F.3d 1144, 1175–76 (11th Cir. 2010). This rule states that, absent a showing of cause and prejudice or a miscarriage of justice, habeas corpus relief shall not be granted in connection with any claim that was not timely raised in accordance with Georgia procedural rules. O.C.G.A. § 9-14-48(d). This includes any claim of ineffective assistance of trial counsel not raised on appeal where the petitioner had new counsel after trial. *Id.*

---

[2] To the extent necessary, we *sua sponte* expand Jeffery's COA on this claim to include the procedural question of whether this claim is procedurally defaulted. *See Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (*sua sponte* expanding a COA "to include whether the district court was correct in its procedural default ruling"); *McCoy v. United States*, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001) (stating that COAs encompass "procedural issues which must be resolved before this Court can reach the merits" of the underlying claims).

8

Jeffery does not dispute that his claim of ineffective assistance of trial counsel is procedurally defaulted due to the state habeas court's application of § 9-14-48(d). He argues, however, that he can establish both cause for the default and prejudice.

**A.**

Federal review of a procedurally defaulted claim is available if a petitioner can show both "cause" for the default and resulting prejudice. *Harris*, 874 F.3d at 688. A "cause" is an objective factor external to the defense that impeded the effort to raise the claim properly in the state court. *Id.* "In order to establish prejudice to excuse a default, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different absent the constitutional violation." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quotation marks omitted). Prejudice alone is not enough in the absence of a showing of cause. *Id.*

In Georgia, an attorney's error in failing to raise a claim at the motion-for-new-trial stage or on appeal may provide cause to excuse a procedural default, so long as that error meets the ordinary standard of constitutionally ineffective assistance. *Id.*; *Williams v. Turpin*, 87 F.3d 1204, 1210 (11th Cir. 1996) ("A criminal defendant has a constitutional right to effective representation by counsel at the motion for new trial stage of Georgia's Unified Appeal Procedure."). To make a successful claim of ineffective assistance of counsel, a petitioner must show that

9

(1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. The inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* Our review is "highly deferential," presuming that counsel's performance was reasonable and making "every effort" "to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).

An attorney may render ineffective assistance under *Strickland* when he fails to investigate and present possible alibi testimony. *See, e.g.*, *Khan v. United States*, 928 F.3d 1264, 1278 (11th Cir.), *cert. dismissed*, 140 S. Ct. 339 (2019) (explaining that deficient performance may be shown where "defense counsel utterly failed to investigate potential witnesses or secure their testimony"). In *Code v. Montgomery*, for example, we concluded that counsel was ineffective when he knew the defendant's "exclusive defense was based on an alibi" but did not contact the two alibi leads the defendant had provided him and "terminated his investigation without

10

determining whether the one witness he contacted could provide an alibi." 799 F.2d 1481, 1483–84 (11th Cir. 1986).

## B.

In proceedings below, Jeffery pointed to appellate counsel's alleged ineffective assistance as the cause for the procedural default.[3] While he does not expressly make that same argument on appeal, he separately contends, consistent with the second COA granted by the district court, that appellate counsel was ineffective for failing to "raise[] the issue of trial counsel's failure to properly investigate and present the alibi evidence" in the amended motion for a new trial or on appeal. Appellant's Br. at 26. Accordingly, Jeffery's claim of ineffective assistance of appellate counsel is, effectively, coterminous with the question of whether he has established cause and prejudice to overcome the procedural default of his claim of ineffective assistance of trial counsel.

Here, Jeffery has not established that appellate counsel was ineffective for failing to raise an ineffective-assistance claim against trial counsel for failing to investigate and present alibi testimony at trial. Although there is a circuit split as to

---

[3] Jeffery's argument on appeal that the procedural default is excused by ineffective assistance of trial counsel misunderstands the inquiry. The state habeas court found that the ineffective-assistance-of-trial-counsel claim was barred due to Jeffery's failure to timely raise it after he obtained new counsel post-trial. *See* O.C.G.A. § 9-14-48(d). Therefore, he must point to some other external "cause" that justifies the failure to raise the issue at the proper time, not simply a compelling claim of ineffective assistance of trial counsel. *See Raleigh*, 827 F.3d at 957 (prejudice alone is not enough in the absence of a showing of cause).

whether the federal courts must defer to a state court's resolution of a claim of ineffective assistance of counsel in the cause-and-prejudice context, we need not resolve that dispute because Jeffery's ineffective-assistance-of-appellate-counsel claim fails even under *de novo* review. *See Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 n.16 (11th Cir. 2020) (declining to resolve this conflict for the same reason).

Appellate counsel's performance was not deficient because there is no evidence that he knew or had reason to believe that there were potential alibi witnesses. The state habeas court credited appellate counsel's testimony that "no one ever told [him] that there were potential, critical witnesses in this case that should have been used as an alibi or anything else." *See Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." (quotation marks omitted)). And nothing in the record contradicts that testimony. While *trial* counsel may have been aware of potential alibi witnesses, there is no evidence that he informed *appellate* counsel of these witnesses either orally or in writing. In addition, appellate counsel testified that Jeffery, in written and oral correspondence, never mentioned the names of potential alibi witnesses. Accordingly, this is not a case where counsel failed to pursue leads provided by the defendant or someone else. *See Code*, 799 F.2d at 1483–84; *see also Strickland*, 466

12

U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

Jeffery maintains that the alibi witnesses would have been discovered had appellate counsel conducted a "reasonable investigation." But he does not identify with any specificity what appellate counsel should have done, but failed to do, to conduct such an investigation. Nor does the record support Jeffery's assertion. Jeffery contends that the Georgia Bureau of Investigation file "contained some of these alibi witnesses information and information that discredits the timeline set forth by the state at trial," but it does not appear that the contents of this file have been made a part of the record, so we do not know what information the file contained. Moreover, the GBI's lead investigator testified at the state habeas hearing that, in speaking to Noel and others during the investigation, he never heard the names of Jeffery's alibi witnesses Vankole and Bailey.

That a reasonable investigation would not necessarily have turned up the alibi witnesses is also supported by the state habeas court's factual findings with regard to trial counsel. According to the state habeas court, trial counsel was unable to get in touch with Noel, whose house Jeffery claimed he had received a ride from on the night of the murder, and trial counsel tried but was unable to obtain any information about the purported alibi witnesses from Jeffery or others. Jeffery has not shown

13

that these findings, which were based on trial counsel's testimony, were unreasonable or clearly erroneous.  And although we know that Jeffery's alibi witnesses were capable of being found, since they testified at the state habeas hearing, we do not know the circumstances of how they were located by post-conviction counsel.  For that reason, we cannot simply infer that the failure to locate these witnesses earlier was the result of an unreasonable investigation.

Without any showing that appellate counsel had reason to believe that there were potential alibi witnesses who were not called at trial, or that appellate counsel failed to take reasonable investigative steps that he did not take, we cannot say that Jeffery has overcome the presumption that appellate counsel's performance was reasonable.  *See Chandler*, 218 F.3d at 1315.  Accordingly, Jeffery has not established either cause to excuse the procedural default of his ineffective-assistance-of-trial-counsel claim or an independent claim of ineffective assistance of appellate counsel.

For these reasons, we affirm the district court's denial of Jeffery's § 2254 petition.[4]

---

[4] Jeffery's argument that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), appears to relate to the state habeas court's determination that the alibi witnesses' testimony was not sufficient to corroborate an alibi for Jeffery.  Like the district court, we express some concern about that determination, but we ultimately need not address it because we affirm on alternative grounds.

14

**AFFIRMED.**