307 Ga. 740
FINAL COPY

S19A1397.  McCLUSKEY v. THE STATE.

BOGGS, Justice.

Clarence McCluskey was convicted of murder and related crimes arising out of the shooting death of his wife, Lisa McCluskey.[1] He appeals, asserting the insufficiency of the evidence to support his convictions for cruelty to children in the third degree, and error in the trial court's refusal to give his requested charges on reckless conduct and involuntary manslaughter. For the reasons stated

---

[1] The crimes occurred on the night of December 22, 2017. On March 9, 2018, a Floyd County grand jury indicted McCluskey for malice murder, felony murder, aggravated assault, terroristic threats, aggravated battery, possession of a firearm during the commission of a crime, and two counts of cruelty to children in the third degree. At a trial from June 13 to 14, 2018, a jury found McCluskey guilty of all charges. The trial court sentenced McCluskey to life in prison for malice murder, five years to be served consecutively for terroristic threats, five years to be served consecutively for the firearm conviction, and twelve months to be served consecutively on each count of cruelty to children. The remaining charges were merged or vacated by operation of law. On June 18, 2018, McCluskey's trial counsel filed a motion for new trial, which subsequent counsel amended on December 12, 2018. McCluskey waived a hearing on his amended motion for new trial, and the motion was denied on March 21, 2019. On April 30, 2019, the trial court granted a consent motion for leave to file an out-of-time appeal. A timely notice of appeal was filed on May 6, 2019. The case was docketed in this Court for the August 2019 term and orally argued on October 23, 2019.

below, we reverse McCluskey's two convictions for cruelty to children, but affirm in all other respects.

1. Construed in the light most favorable to the jury's verdicts, the evidence showed that on December 22, 2017, McCluskey's aunt drove him across town to celebrate a cousin's birthday. On the way there, McCluskey asked his aunt to stop at a liquor store, where he purchased a quart of vodka. Later that evening, Lisa and McCluskey's aunt returned to pick up McCluskey and found him some distance away from the cousin's house at a "street party" in an intoxicated condition. McCluskey refused to leave the party, and eventually five men picked him up and put him in the back seat of the car. Lisa dropped McCluskey's aunt off at her house, and then drove home. At home, the McCluskeys began arguing, and at some point, McCluskey pressed the muzzle of a pistol to Lisa's face and fired. The bullet traversed her brain and came to rest inside her skull; she died at the scene.

Later the same evening, at approximately 10:00, a Floyd County Police Department sergeant arrived at the McCluskeys'

2

house in response to a 911 call that a woman had been shot. He found two teenagers, later identified as the McCluskeys' grandchildren, outside the house, crying hysterically. The sergeant made contact with McCluskey, who was lying on the floor on top of a bleeding woman. McCluskey smelled of alcohol, his speech was slurred, and he was screaming and cursing. McCluskey stood up and approached the sergeant but ignored the sergeant's instructions to show his hands and continued to curse and scream. The sergeant grabbed him by the collar and "spun" him out of the house.

Backup officers arrived almost immediately and assisted the police sergeant in subduing and handcuffing McCluskey, who repeatedly stated that he had shot Lisa. He also threatened officers numerous times, saying that he was going to kill them "when he got out" and that he had a Draco AK-47 pistol that he would use on them. A video recording from the sergeant's body camera was played for the jury.

The sergeant re-entered the house and briefly questioned the two grandchildren, both of whom told him that they had heard their

3

grandparents arguing. At the police station, McCluskey was taken to an interview room, where he continued to threaten officers and state that he had killed Lisa. When an investigator interviewed McCluskey the following morning, there had been a "180 degree change" in McCluskey's demeanor, and he was no longer combative or threatening. McCluskey denied having argued with Lisa. He told the investigator that he had the pistol in his front jacket pocket and when he pulled it out, it just "went off."

In the course of their investigation, police officers found a .25 caliber pistol, with a spent shell trapped in the receiver, behind some dustpans and mops in the kitchen area. They also found an empty magazine matching the pistol under a dining room chair and several rounds of .25 caliber ammunition on a bed in a nearby bedroom. A firearms examiner testified that the bullet removed from the victim's brain was fired from the .25 caliber pistol found at the scene. He also testified that, while the pistol had a weak recoil spring, that would only affect the ejection of a spent shell and would not cause the gun to go off accidentally. Finally, he testified that the

4

characteristics of the gunshot wound showed that the muzzle was pressed to the victim's face when the gun was fired.

At trial, McCluskey's aunt, sister, and daughter testified that McCluskey had an escalating drinking and drug problem and that Lisa was planning to leave him. McCluskey's daughter testified that when McCluskey "was sober, he was the sweetest man in the world. . . . But when he turned to drinking, it was just something different, like it wasn't him."

McCluskey testified on his own behalf at trial and again denied having an argument with Lisa. He stated that he took the pistol with him when he went across town, but that he had removed the magazine, cleared a round from the chamber, put that round back in the magazine, and replaced the magazine in the pistol. He testified that, after he and Lisa arrived home, she asked him if he had his "pop gun with [him]." McCluskey said that in response, he took the pistol out of his pocket and, believing there was no round in the chamber, pulled the trigger so Lisa could "hear the gun click," but at that moment she bent down to retrieve clothes off the couch

and was shot in the head. He stated that he was "trying to mess" with Lisa, but the pistol was "not supposed to fire" because he believed that he had removed the bullet.

On cross-examination, when asked if "this was you horseplaying," McCluskey denied that he intentionally put the gun beside Lisa's head. When asked about the evidence that the gun was pressed against Lisa's face, McCluskey responded that he was "right up on her" when she leaned down to pick up clothes from the couch and he claimed that he "just happened to be pulling that trigger." He contended that Lisa put her face to the gun as he pulled the trigger "to let her hear the gun click. And I know she was going to get on me, get — get mad at me and get on me about it," but "the gun should have clicked" instead of firing because he "didn't think the magazine was loaded."[2]

(a) McCluskey asserts that the evidence was insufficient to support his convictions on Counts 7 and 8, the two counts of cruelty

---

[2] This was inconsistent with McCluskey's earlier testimony that he had cleared a round from the chamber and replaced it in the magazine.

to children in the third degree, one for each grandchild who was in the home at the time of the shooting. We agree.

OCGA § 16-5-70 (d) (2) provides:

> Any person commits the offense of cruelty to children in the third degree when . . . [s]uch person, who is the primary aggressor, having knowledge that a child under the age of 18 is present and sees or hears the act, commits a forcible felony, battery, or family violence battery.

As the trial court noted in its order denying McCluskey's motion for new trial, the children experienced the immediate aftermath of the shooting — the gory scene of their grandmother's death and their grandfather's agitated and belligerent conduct — and it was "an experience these children will be unlikely to ever forget." But the Code section, by its plain terms, requires that the child see or hear *the act* of committing the underlying offense, not its aftermath. OCGA § 16-5-70 (d) (2).

At trial, the 16-year-old grandson testified that he was upstairs in his room when "something just told me to go downstairs, and I did," and that he was walking downstairs when he smelled

7

"something weird" and then saw "just chaos." He testified that he had been upstairs in his room "the whole time" and that he did not know that his grandparents had returned home. He specifically denied that he heard any arguing downstairs, or a gunshot. He also denied that his grandparents argued frequently, that he had ever heard McCluskey threaten his grandmother, or that he recalled a recent pretrial meeting with investigators and the prosecutor, in which he told them about McCluskey's history of threatening his grandmother.

Upon further questioning, the grandson acknowledged that he was reluctant to testify because some people in his family had differences of opinion about his grandfather's culpability, and that he did not "want to be in the middle of that." The grandson then admitted that he did recall the recent meeting with investigators and the prosecutor and that he had told them as well as the police about his grandfather's various threats against his grandmother, including threatening to shoot her. But the grandson never altered his testimony that he did not hear a gunshot, and the State failed to

8

present any other evidence at trial that would support a reasonable inference that he did. Compare *Dennard v. State*, 305 Ga. 463, 465-466 (1) (826 SE2d 61) (2019) (evidence sufficient to support conviction for third-degree cruelty to children when recording played at trial in which witness reported to dispatcher that defendant shot victim "right in front of the kids" and children could be heard screaming). Here, the ambiguous statement that "something just told" the grandson to go downstairs, without more, cannot establish that the grandson heard *the act* constituting the underlying offense, particularly in light of his specific and uncontradicted testimony that he did not hear a gunshot. Thus, we conclude that the evidence was insufficient to support McCluskey's conviction on this count.

The evidence is also insufficient to support McCluskey's conviction on the cruelty to children count involving the McCluskeys' 14-year-old granddaughter. At trial, the granddaughter testified that she was upstairs in her room wearing headphones when the shooting happened, and that she did not know that anything was wrong until her brother came upstairs and told

9

her that "granddaddy shot mama."[3] The State presented no evidence of any pretrial statements or any other evidence inconsistent with the granddaughter's trial testimony. The evidence was insufficient to allow a rational jury to find beyond a reasonable doubt that McCluskey committed the offense of cruelty to children in the third degree with respect to the granddaughter. Accordingly, we also reverse McCluskey's conviction and sentence on this count.

(b) McCluskey has not challenged the sufficiency of the evidence to support his remaining convictions. However, as is this Court's practice in murder cases, we have reviewed the record to determine the legal sufficiency of the evidence. We conclude that the evidence presented at trial and summarized above was more than sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that McCluskey was guilty of the other crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error, McCluskey contends that

---

[3] The grandchildren referred to their grandmother as "Mama."

the trial court erred in failing to give his requested charges on reckless conduct, OCGA § 16-5-60 (b), as a lesser included offense of aggravated assault and involuntary manslaughter, OCGA § 16-5-3, as a lesser included offense of murder. He points to his testimony at trial that the shooting was unintentional, because he mistakenly believed that the pistol did not have a live round in the chamber and was "not supposed to fire" when he pulled the trigger. This testimony, he contends, supports an inference that he did not deliberately shoot Lisa, but rather was criminally negligent, and constitutes at least slight evidence that he committed the offenses of reckless conduct and involuntary manslaughter.

As the Attorney General correctly notes, McCluskey's claim regarding the trial court's alleged error in failing to charge reckless conduct as a lesser included offense of aggravated assault is moot. The aggravated assault count of the indictment merged with the malice murder conviction, and the felony murder count, predicated in part on aggravated assault, was vacated by operation of law. See *Solomon v. State*, 304 Ga. 846, 849 (3) (823 SE2d 265) (2019)

11

(holding claim of error in refusing charge on reckless conduct as lesser included offense of aggravated assault is moot when defendant not convicted of aggravated assault). Accordingly, this claim presents nothing for our review.

McCluskey contends that the trial court erred in failing to give his requested charge on involuntary manslaughter as a lesser included offense of murder, because his testimony presented slight evidence that he had no intention of killing Lisa and did so while engaged in an act of criminal negligence, pulling the trigger of a pistol he believed to be unloaded in order to "mess with her."

But, even assuming without deciding that McCluskey's confusing and contradictory testimony would support the requested charge, "the failure to give a requested charge which is authorized by the evidence can be harmless error. The inquiry is whether it is highly probable that the error contributed to the verdict." (Citation and punctuation omitted.) *Reddick v. State*, 301 Ga. 90, 92 (1) (799 SE2d 754) (2017). Here, the evidence of McCluskey's guilt, as summarized above, was compelling. Thus, even assuming that the

failure to give the charge was erroneous, any such error was harmless, and this claim is without merit.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JANUARY 27, 2020.
Murder. Floyd Superior Court. Before Judge Colston.
*Ryan C. Locke*, for appellant.
*Leigh E. Patterson, District Attorney, Luke A. Martin, Kayleigh*

*A. Carter, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.