312 Ga. 212
FINAL COPY

S21A0640, S21X0641.  THE STATE v. OWENS; and vice versa.

MCMILLIAN, Justice.

After Stephan Joseph Owens was convicted of felony murder and other crimes related to the shooting death of Richard Osadebe Egoegonwa, he was granted a new trial on the felony murder charge. The State appeals, and Owens cross-appeals. Because the trial court erred in granting a new trial on the ground that the verdicts as rendered were repugnant, we reverse that portion of the order granting the new trial. In Owens's cross-appeal, we affirm except to correct a sentencing error.[1]

---

[1] Egoegonwa died on July 5, 2015. On October 9, 2015, a Fulton County grand jury returned an indictment for malice murder, felony murder, and two counts each of aggravated assault, possession of a firearm during the commission of a felony, and cruelty to children in the third degree. Owens's first trial ended in a mistrial. At a second trial held from December 12 to 15, 2016, the jury found him not guilty of malice murder but guilty of felony murder and the remaining counts. The jury also found Owens not guilty of voluntary manslaughter as a lesser offense of malice murder and felony murder. One aggravated assault count merged with the felony murder count.

The evidence presented at trial showed that Jonathan Hampton invited his friends Egoegonwa, Owens, and Owens's girlfriend, Jasmine Keith, to a barbeque hosted by Hampton's niece on July 4, 2015. Hampton drove them all to the party in Keith's minivan that evening. Along the way, they dropped off two of Keith's older children at her mother's apartment but brought two toddlers and a newborn baby to the party.

Egoegonwa purchased liquor to share at the party and became intoxicated that evening; his postmortem blood alcohol level was 0.236. The partygoers lit firecrackers, and as the guests were eating, drinking, and laughing together after midnight, Egoegonwa started rambling belligerently, insulting Owens, and insisting that Owens "owe[d]" him, presumably for the liquor. They "exchanged words,"

---

Owens was sentenced to serve life in prison for felony murder, twenty years in prison for aggravated assault to be served concurrently, five years in prison to be served consecutively for each firearm-possession count, and twelve months in prison for each child-cruelty count to be served concurrently. On January 10, 2017, Owens filed a motion for new trial, which he amended on April 13, 2018. After a hearing, the trial court granted in part and denied in part his motion for new trial on December 14, 2020. The State timely appealed, and Owens timely cross-appealed. These cases were docketed to the April 2021 term of court and submitted for a decision on the briefs.

and Owens pushed Egoegonwa, who stumbled and fell to the ground. Egoegonwa exclaimed that Owens could not treat him like "an ant." The two were separated, and seeing the potential for violence, the hosts asked them to leave.

Hampton, Owens, and Keith packed up and went to secure the children in the van, but in the driveway Egoegonwa staggered and ran toward Owens angrily, fists closed, telling Owens, "[Y]ou can't keep treating me like this." Owens pointed a gun at Egoegonwa, who was unarmed, and expressed anger at the hosts for insisting that he and his family leave. Hampton convinced Owens to put away his gun, and others held Egoegonwa back so that Owens could enter the van. Hampton drove, Egoegonwa sat in the front passenger seat, and Owens sat immediately behind the driver's seat. The baby was in a car seat behind Egoegonwa, and Keith and the two toddlers were in the back.

On their way to pick up Keith's older children, who were 10 to 15 minutes away, Egoegonwa turned toward Owens, and they were "fussing back and forth." Egoegonwa continued to ramble loudly

about how poorly he had been treated, but Hampton and Owens ignored and talked over him, telling jokes to lighten the mood. When Egoegonwa persisted, Owens shoved Egoegonwa's shoulder and told him, "[S]hut up, turn around, nobody wants to hear you talking." Then, Egoegonwa pushed Owens's head, and Hampton saw Owens's gun come close to Egoegonwa's face. As they parked at Keith's mother's apartment, Owens shot Egoegonwa once, and Egoegonwa died at the scene. Hampton testified that he was "not sure if [the children] were [a]sleep" at the moment of the shooting. After exiting the van, Owens briefly kissed Keith and the children, told Hampton that he was sorry, and fled on foot. Owens turned himself in to the police a few days later.

At trial, Owens testified that he acted in self-defense because he thought Egoegonwa would strike him, that Egoegonwa had grabbed for Owens's gun, and that the gun went off accidentally as the two men were struggling over the gun in the minivan. The trial court agreed to give a jury instruction on voluntary manslaughter as a lesser offense at Owens's request, including an instruction that

4

the jury must consider whether mitigating circumstances existed before rendering verdicts on malice murder and felony murder. As for completing the verdict form, the trial court instructed that on the one hand, if the jury found Owens guilty of an offense beyond a reasonable doubt, the form of the verdict would be "we, the jury, find the defendant guilty." On the other hand, the trial court instructed that if the jury did not believe that Owens was guilty of the offense, the form of the verdict would be "we, the jury, find the defendant not guilty."

Both the prosecutor and defense counsel reviewed the verdict form, and neither objected before the jury returned its verdict. The verdict form had separate lines for each offense, and the final one directed the jury to consider voluntary manslaughter:

> As to Count 1, MURDER, and Count 2, FELONY MURDER, if you found mitigating circumstances as provided in the Court's charge, then, as to VOLUNTARY MANSLAUGHTER, We, the members of the jury, find the Defendant Stephan J. Owens,
> NOT GUILTY _____          GUILTY _____

The jury checked guilty on the lines for felony murder, both counts

of aggravated assault, both counts of possession of a firearm during the commission of a felony, and both counts of cruelty to children in the third degree, but it checked not guilty on the lines for malice murder and voluntary manslaughter. In a conference outside the jury's presence before the verdicts were published, the trial court discussed the verdicts with the parties, at which point the defense objected to accepting the verdicts, arguing, without explanation, that they were confusing and required speculation to discern the jury's intent. The court overruled the objection and accepted the verdicts. After the verdicts were published, the defense objected again to the form and legality of the verdicts.

Following a hearing on the motion for new trial, a different trial judge than the one who presided over Owens's trial vacated the jury's verdicts on felony murder and voluntary manslaughter as repugnant and granted a new trial.[2] See *McElrath v. State*, 308 Ga.

_____

[2] The trial court denied the motion for new trial on all other grounds asserted, except it concluded that one of Owens's two guilty verdicts for possession of a firearm during the commission of a felony should have merged into the other count and ordered that Owens be resentenced accordingly.

6

104, 111 (2) (c) (839 SE2d 573) (2020) (when a jury makes affirmative findings as shown on the record that cannot logically or legally exist at the same time, such verdicts are repugnant and must be vacated). First, the court determined that Owens properly preserved the issue of whether the verdicts were repugnant because he timely objected to accepting the verdicts. Second, citing *Cheddersingh v. State*, 290 Ga. 680 (724 SE2d 366) (2012), the court concluded that the verdict form was erroneous because it instructed the jury to consider voluntary manslaughter only if the jury found mitigating circumstances, and because the jury returned a verdict on that charge, the jury must have decided that there were mitigating circumstances "as a precondition." Citing *Edge v. State*, 261 Ga. 865, 865 (2) (414 SE2d 463) (1992), which held that "where the jury renders a [guilty] verdict for voluntary manslaughter, it cannot also find felony murder based on the same underlying aggravated assault," the court concluded that the jury, "having found mitigation as expressed in the verdict form, could not [legally] return a verdict of guilty on felony murder and not guilty on

7

voluntary manslaughter," and therefore that the verdicts were repugnant under *McElrath*, 308 Ga. at 111 (2) (c).

*Case No. S21A0640 (State's Appeal)*

1. The State asserts that the trial court erred in granting a new trial as to felony murder due to the court's view that the verdict form was erroneous and that the verdicts were repugnant.

(a) As an initial matter, both parties argue that the other has waived its claims on appeal regarding the verdicts. Owens contends that because the State focused its initial appellate brief on the verdict form rather than the trial court's determination that the verdicts were repugnant, the State abandoned any argument on appeal that the verdicts were repugnant. In reviewing the State's briefing on appeal, we note that in its opening brief, the State enumerated as error the grant of the new trial but focused its argument on problems with the verdict form and why the trial court erred in determining that the jury must have found mitigating circumstances; it then expanded its argument as to why the verdicts were not repugnant in its reply brief. We conclude that although the

8

State's initial brief was inartful in how it presented its arguments, the State sufficiently challenged the basis for the grant of a new trial such that it has not abandoned this argument on appeal. See Supreme Court Rules 19, 22 (regarding enumerations of error, argument, and citation of authority).

Conversely, the State contends that because Owens did not object to the verdict form before the jury retired to deliberate, the trial court erroneously found that Owens had preserved his claim regarding the verdict. See OCGA § 17-8-58 (a) ("Any party who objects to any portion of the charge to the jury . . . shall inform the court of the specific objection . . . before the jury retires to deliberate."). Therefore, the State argues, the trial court should have applied plain error review, and under plain error review, the trial court should not have granted a new trial. See id. at (b) (limiting review to plain error when party fails to object in accordance with subsection (a)).

The State is fundamentally mistaken in its views. Whether Owens properly objected to the verdict form is distinct from the

question of whether the verdicts as rendered were repugnant. Assuming without deciding that the trial court should have applied the plain error test in reviewing the issues with the verdict form, Owens separately asserted at the motion for new trial that the verdicts were repugnant. In considering whether verdicts were repugnant and thus void, we have held that "no valid judgment may be entered on a void verdict." *Allaben v. State*, 294 Ga. 315, 321 (2) (b) (751 SE2d 802) (2013), overruled on other grounds, *State v. Springer*, 297 Ga. 376, 382-83 (2) & n.4 (774 SE2d 106) (2015). Accordingly, any judgment and sentence entered on repugnant verdicts are void and can be challenged in any proper proceeding, including a timely filed motion for new trial and a properly filed direct appeal. See *Nazario v. State*, 293 Ga. 480, 485 (2) (b) (746 SE2d 109) (2013). Thus, Owens has not waived this claim for review by the trial court or on appeal.

(b) Turning to the merits, the State asserts that because the verdict form — when properly considered with the jury charges, the trial court's written instructions, and the closing arguments — does

10

not necessarily show that the jury found mitigating circumstances, the resulting guilty verdict for felony murder and not guilty verdict for voluntary manslaughter were not repugnant. We agree.

Repugnant verdicts "occur when, in order to find the defendant not guilty on one count and guilty on another, the jury must make *affirmative* findings shown on the record that cannot logically or legally exist at the same time." *McElrath*, 308 Ga. at 111 (2) (c) (emphasis in original). When verdicts are repugnant, they must be vacated and a new trial must be conducted. Id. In contrast, "inconsistent verdicts occur when a jury in a criminal case renders seemingly incompatible verdicts of *guilty* on one charge and *not guilty* on another." Id. at 108 (2) (a) (emphasis in original). Inconsistent verdicts are permitted to stand because the jury's rationale is not apparent from the record and courts generally are not permitted to make inquiries into the jury's deliberation process.[3]

---

[3] A third category of verdicts — mutually exclusive verdicts — does not apply here because that category involves "*two guilty* verdicts that cannot legally exist simultaneously." *McElrath*, 308 Ga. at 110 (2) (b) (emphasis in original).

11

Compare *Guajardo v. State*, 290 Ga. 172, 174 (2) (718 SE2d 292) (2011) (repugnant verdicts require reversal "in the rare instance where, instead of being left to speculate as to the jury's deliberations, the appellate record makes transparent the jury's rationale"), with *Thornton v. State*, 298 Ga. 709, 713-14 (2) (784 SE2d 417) (2016) (jury may render inconsistent verdicts because of "mistake, compromise, or lenity" (citing *United States v. Powell*, 469 U.S. 57, 65 (105 SCt 471, 83 LE2d 461) (1984))).

Ordinarily, a guilty verdict on felony murder and a not guilty verdict on voluntary manslaughter would not be inconsistent, much less repugnant, because they are separate offenses upon which the jury would be free to find the defendant guilty or not guilty based on the facts of the case. See *Carter v. State*, 298 Ga. 867, 869 (785 SE2d 274) (2016) (no repugnant verdict on "two different offenses upon which the jury was free to find [the defendant] guilty or not guilty based on the facts of the case as interpreted by the jury"); cf. *Edge*, 261 Ga. at 865-66 (2) (applying a modified merger rule to reverse felony murder conviction when the jury also found defendant guilty

of voluntary manslaughter based on the same underlying aggravated assault). However, Owens argues that because of the conditional "if" statement in the voluntary manslaughter line on the verdict form, the fact that the jury returned a verdict on voluntary manslaughter at all, rather than leaving that section blank, constitutes an affirmative finding of mitigating circumstances, so the verdicts for voluntary manslaughter and felony murder based on the same aggravated assault were repugnant.

Owens's argument relies solely on the language in the verdict form, but in determining the meaning of the verdicts, it is critical to consider the jury instructions as a whole. See *Cheddersingh*, 290 Ga. at 683 (2) ("Preprinted verdict forms have been treated as a portion of the jury instructions."). As to voluntary manslaughter, the trial court charged:

> After consideration of all of the evidence[, and] before you would be authorized to return a verdict of guilty of malice murder or felony murder[,] you must first determine whether mitigating circumstances if any would cause the offense to be reduced to voluntary manslaughter as defined below.

The jury was then charged on the elements of voluntary manslaughter and that the burden of proof was on the State to prove beyond a reasonable doubt that the offense was not so mitigated. Near the close of the charge, the jury was also instructed that, should it find beyond a reasonable doubt that Owens committed the offenses alleged in the indictment, the jury would be authorized to find Owens guilty, and in that event, the form of the verdict would be "we, the jury find the defendant guilty." The jury was further instructed that if it did not believe that Owens was guilty, then it would have a duty to acquit, in which event the form of the verdict would be "we, the jury find the defendant not guilty." The instructions were provided to the jury in writing during their deliberations.[4]

The jury was not instructed orally or in writing to leave the voluntary manslaughter line blank if it concluded that there were no mitigating circumstances. To the contrary, the State argued in

---

[4] Neither the State nor Owens argues on appeal that the charges were improper.

closing that the jury should find Owens guilty of malice murder and felony murder, explained the consequences of also marking guilty for voluntary manslaughter, and urged the jury to mark "not guilty" on voluntary manslaughter.[5]

Although when viewed in isolation, the verdict form could suggest that the jury found mitigating circumstances, the trial court's other instructions and the State's explanations during closing argument support the conclusion that the jury, by marking "not guilty" on the line for voluntary manslaughter, found that there were no mitigating circumstances and thus that Owens had not

---

[5] In its closing the argument, the State told the jury, after explaining voluntary manslaughter:

> [I]f you find him guilty of voluntary manslaughter, you automatically find him not guilty of malice murder and felony murder. . . . [I]f you write guilty [of] malice murder, guilty [of] felony murder, and guilty [of] voluntary manslaughter[,] it's like you wrote not guilty of murder and not guilty of felony murder . . . .
>
> So please do not if you think that he's guilty of the first two and continue down the line and find him guilty of voluntary manslaughter. It's either or, okay. So I'd ask that you find him guilty of malice murder, felony murder . . . but not guilty of voluntary manslaughter because he wasn't justified when he committed the act.

committed voluntary manslaughter.[6] Because the record does not show that the jury made an affirmative finding that mitigating circumstances existed, the verdicts were not repugnant, and the trial court erred in granting a new trial on this basis. See *Guajardo*, 290 Ga. at 174-75 (2) (despite jury's question suggesting that it found appellant not guilty of malice murder due to self-defense, guilty verdicts on felony murder and other counts were not repugnant because jury did not make its reasoning transparent); cf. *McElrath*, 308 Ga. at 112 (2) (c) (verdicts of not guilty by reason of insanity on malice murder and guilty but mentally ill on felony murder were repugnant because "it is not legally possible for an individual to simultaneously be insane and not insane during a single criminal episode against a single victim"); *Turner v. State*, 283 Ga. 17, 21 (2) (655 SE2d 589) (2008) (verdicts were repugnant based on jury's express finding of justification that was clear from verdict

---

[6] Though we see no reversible error under the circumstances of this case, we do not endorse the language used in the verdict form for voluntary manslaughter as a lesser offense of malice murder and felony murder.

form).

2. The State does not challenge the trial court's determination in its order granting the motion for new trial that one of the firearm-possession counts should have merged into the other and that resentencing is required, so we do not reach this issue, and that part of the trial court's order stands.

*Case No. S21X0641 (Owens's Cross-Appeal)*

3. Owens contends that even if the Court concludes that the verdicts are not repugnant, he is still entitled to a new trial because the trial court plainly erred in using the verdict form, which made "it impossible to know the jury's true findings."[7]

---

[7] The State argues that Owens is precluded from asserting this claim because the trial court found in its order granting his motion for new trial that the verdict form was erroneous, and that because this issue was resolved in Owens's favor, it could not be the subject of Owens's cross-appeal. However, the State misapprehends the nature of Owens's argument. Owens asserts that if this Court were to reverse the grant of the new trial, as we have done here, he is nonetheless entitled to a new trial because the trial court committed plain error in using the verdict form. See OCGA §§ 5-7-1 (b) ("In any instance in which any appeal is taken by and on behalf of the State of Georgia in a criminal case, the defendant shall have the right to cross appeal. Such cross appeal shall be subject to the same rules of practice and procedure as provided for in civil cases under Code Section 5-6-38."); 5-6-38 (a) ("[A]ppellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him[.]").

To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*Stewart v. State*, 311 Ga. 471, 475-76 (1) (b) (858 SE2d 456) (2021) (citation and punctuation omitted). Here, even assuming without deciding that the instruction on voluntary manslaughter on the verdict form was erroneous, Owens has not shown that the error likely affected the outcome of his trial. Despite any ambiguity in the form, the trial court properly instructed the jury on voluntary manslaughter and how to complete the verdict form, and based on those instructions, the jury clearly found Owens not guilty of voluntary manslaughter. Because Owens is not entitled to "know the jury's true findings," apart from what is revealed on the face of the record, Owens has failed to carry his burden of proving plain error. See *Williams v. State*, 304 Ga. 455, 459-60 (3) (818 SE2d 653) (2018) (appellant could not show that error in jury instruction likely affected the outcome of trial).

4. Owens asserts that he was denied his right to effective assistance of trial counsel because (1) counsel failed to preserve the alleged error in the verdict form and (2) counsel did not generally demur to the child-cruelty counts. To succeed on these claims, Owens must demonstrate both that his trial counsel performed deficiently and that he was prejudiced by this deficient performance, meaning that a reasonable probability exists that absent counsel's deficient performance, the outcome at trial would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). We need not address both prongs if the defendant makes an insufficient showing on one. See id.

(a) Even assuming that trial counsel should have objected to the verdict form, Owens cannot show that a reasonable probability exists that the outcome of the trial would have been different, so Owens's ineffective assistance of counsel claim on this ground fails. See *Bozzie v. State*, 302 Ga. 704, 711 (4) (b) (808 SE2d 671) (2017) ("The prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim.").

19

(b) Owens also contends that his trial counsel rendered ineffective assistance by failing to challenge the child-cruelty counts by general demurrer because those counts did not name the child victims or specify the forcible felony that was the basis for the charges. A general demurrer challenges the legality, validity, and substance of an indictment by asserting that the indictment is fatally defective and thus incapable of supporting that a crime was committed; it can be granted only if the defendant could admit each and every fact alleged in the indictment and still be innocent of any crime. See *State v. Mondor*, 306 Ga. 338, 340-44 (1) (830 SE2d 206) (2019).

Here, the two third-degree child-cruelty counts were identical—both alleged that Owens committed the offense of cruelty to children in the third degree by "commit[ting] a forcible felony" "on the 5th day of July, 2015[,] being the primary aggressor and having knowledge that a child under the age of 18 was present and saw or heard the act." Although the counts incorrectly cite OCGA § 16-5-70 (d) (1), they track the language of OCGA § 16-5-70 (d) (2), which

20

provides that a person commits the offense of cruelty to children in the third degree when "[s]uch person, who is the primary aggressor, having knowledge that a child under the age of 18 is present and sees or hears the act, commits a forcible felony, battery, or family violence battery."

Owens is correct that as a general rule, an indictment for an offense against the person should include the name of the victim. See *Irwin v. State*, 117 Ga. 722 (2) (45 SE 59) (1903) ("[I]t is necessary that, in an indictment for an offense against the person of another, the person injured should be referred to by his correct name[.]"). However, we have explained that this rule is in place to comport with constitutional due process, and thus,

> an indictment charging a defendant with a criminal offense must satisfy two criteria: (1) it must contain the essential elements of the crimes and apprise a defendant of what he must be prepared to meet at trial; and (2) it must show with accuracy to what extent the defendant may plead a former acquittal or conviction.

*State v. Grube*, 293 Ga. 257, 260 (2) (744 SE2d 1) (2013). An indictment charging a crime against a person meets these

21

requirements "best when it provides the full and correct name of the victim." Id.

"But the lack of notice of the charges or allegations goes to the *form* of the indictment, which is challenged by a special demurrer, rather than a general demurrer." *State v. Heath*, 308 Ga. 836, 839 (843 SE2d 801) (2020) (emphasis in original); see also *Grube*, 293 Ga. at 260 (2) (treating challenge under *Irwin* as an issue for a special demurrer); *Dennard v. State*, 243 Ga. App. 868, 877 (2) (534 SE2d 182) (2000) (recognizing failure of indictment to allege victim's name in attempt crime was subject to special demurrer). Because Owens only asserts on appeal that his counsel performed deficiently by failing to file a general demurrer, rather than a special demurrer, his ineffectiveness claim on this ground fails.[8]

Owens further argues that trial counsel performed deficiently by not filing a general demurrer on the ground that the forcible

---

[8] In his amended motion for new trial, Owens argued that his trial counsel performed deficiently by failing to file both a general demurrer and a special demurrer, but he does not renew the special-demurrer argument on appeal. See *Heath*, 308 Ga. at 840 (failure to specially demur is generally not prejudicial because it must be raised pretrial and State can re-indict).

felony was not set out in the indictment, citing *Polk v. State*, 275 Ga. App. 467, 468-69 (1) (620 SE2d 857) (2005), and *Everhart v. State*, 337 Ga. App. 348, 355 (3) (a) (786 SE2d 866) (2016). However, neither *Polk* nor *Everhart* considered the question of whether a third-degree child-cruelty count that does not name the forcible felony is subject to a general demurrer, and neither case expressly extended its reasoning to the failure to allege the forcible felony to third-degree child cruelty. See *Polk*, 275 Ga. App. at 468-69 (1) (challenge to a burglary charge on the basis that it did not put the defendant on notice of the charges against him); *Everhart*, 337 Ga. App. at 355 (3) (a) (considering different subsection of the child-cruelty statute and whether the State alleged the essential elements of that crime to avoid being subject to general demurrer). It is well settled that "[t]he standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." *Brooks v. State*, 309 Ga. 630, 637 (2) (847 SE2d 555) (2020) (citation and punctuation omitted); see also *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019) ("A criminal

23

defense attorney does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." (citation and punctuation omitted)). Consequently, Owens cannot show that his counsel's performance was constitutionally deficient.

5. Owens further argues that the evidence was insufficient to support that he committed child cruelty because it is not clear that the children heard or saw the shooting, but we disagree. Cruelty to children in the third degree is committed when a primary aggressor either intentionally or knowingly allows a child to see or hear the act of committing "a forcible felony." See OCGA § 16-5-70 (d) (1)-(2); *McCluskey v. State*, 307 Ga. 740, 743 (1) (a) (838 SE2d 270) (2020) (child victim must see or hear criminal act rather than just encounter or experience its aftermath).

When reviewing the sufficiency of the evidence, an appellate court no longer presumes the innocence of the defendant and instead views the evidence in a light most favorable to the jury's verdict. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61

24

LE2d 560) (1979). Viewed in this light, the evidence presented at trial regarding cruelty to children was that Owens loaded three children into the minivan who were then present at close quarters when Owens shot Egoegonwa in the early hours of the morning. Hampton testified that he did not know if the children were awake or asleep, and none of the children or their mother testified about whether they were awake or affected by the shooting. However, Owens knew that the children were present in the van at the time of the shooting, and the jury could infer that a gunshot in the minivan would awaken the children even if they were sleeping. Therefore, there was sufficient evidence to enable a rational trier of fact to infer that the children at least heard the shooting and to conclude beyond a reasonable doubt that Owens was guilty of cruelty to children in the third degree. Compare *McCluskey*, 307 Ga. at 743-44 (1) (a) (evidence was insufficient where teenagers witnessed attack's aftermath but did not hear attack itself), with *White v. State*, 319 Ga. App. 530, 533 (3) (737 SE2d 324) (2013) (even though there was no evidence that two-year-old was awake to witness

25

defendant's attack on her mother, older sibling testified that two-year-old was shaking after it, and therefore "the jury was authorized to infer that . . . [the two-year-old] awoke when she heard the adult victim screaming during the attack").

6. Finally, Owens asserts two sentencing errors. First, he argues on appeal, and the State concedes, that one of the counts for cruelty to children in the third degree should have merged with the other because these counts in the indictment were identical, and the jury could have found Owens guilty of child cruelty based on the same child seeing or hearing the same crime. We agree, vacate Owens's convictions for cruelty to children, and remand for resentencing on only one of the child-cruelty counts. Cf. *Dukes v. State*, 311 Ga. 561, 570 (4) (858 SE2d 510) (2021) (defendant may not be convicted and sentenced for the identical crime twice).

We reach a different result with respect to Owens's contention that his two aggravated assault convictions should have merged. One count alleged that Owens committed aggravated assault with a deadly weapon under OCGA § 16-5-21 (a) (2) "by brandishing a

26

handgun and pointing it at, toward, and in the direction of . . . Egoegonwa," and the other accused Owens under the same statute of "shooting him with a handgun." Neither count averred a specific time or location of the assault. Owens argues that the jury could have found him guilty of both aggravated assault counts based on only the evidence that he shot the victim in the minivan because "[i]t is virtually impossible to shoot someone without first brandishing a weapon in their direction."

Where a merger analysis involves multiple counts of the same crime, as here, we look at the unit of prosecution criminalized by the legislature. See *Dukes*, 311 Ga. at 570 (4). OCGA § 16-5-21 (a) (2) provides, in pertinent part, that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon[.]" The unit of prosecution is thus the assault with the deadly weapon. It is clear here that there were two assaults separated by a significant period of time, in different locations, and with separate potential injuries to the victim. The evidence supported, and the State argued, that Owens brandished his gun at

27

Egoegonwa while still at the party in a manner that was likely to cause him serious bodily injury, and then 10 to 15 minutes later Owens shot Egoegonwa in the minivan at the apartment complex parking lot. The aggravated assault convictions do not merge under the circumstances of this case. See *Ortiz v. State*, 291 Ga. 3, 6-7 (3) (727 SE2d 103) (2012) (evidence supported two distinct assaults against the victim, separated by a "deliberate interval" during which the defendant shot someone else); cf. *Jeffrey v. State*, 296 Ga. 713, 718 (3) (770 SE2d 585) (2015) (four aggravated assault convictions merged when "there was no evidence that the shooting occurred in a manner other than in a single transaction, with no 'deliberate interval' separating any of the shots").

*Judgment affirmed in part and vacated in part, and case remanded with direction in Case No. S21X0641. Judgment reversed in Case No. S21A0640. All the Justices concur, except Colvin, J., not participating.*

28

Decided August 10, 2021.

Murder. Fulton Superior Court. Before Judge Russell.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Burke O. Doherty, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Lauren B. Shubow*, for appellee.